UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| NATIONWIDE RECOVERY, INC., | Case No. 2:17-cv-12378 |
| Plaintiff, | Hon. |
| | Mag. Judge. |
| vs. | |
| CITY OF DETROIT, | |
| Defendant. | |

COMPLAINT & JURY DEMAND

Plaintiff, Nationwide Recovery, Inc., through its attorney Marc A. Deldin (P71041), brings this Complaint and states:

I.   PRELIMINARY STATEMENT

1.   The City of Detroit failed to provide Plaintiff with prior notice or a pre-deprivation hearing before terminating or suspending Plaintiff's City-issued towing permit, in violation of Plaintiff's procedural due process rights. Plaintiff has a protected property interest in the towing permit, as it was issued pursuant to the City's Ordinance and accompanying regulatory scheme. High level policy makers within the City authorized the termination or suspension of Plaintiff's towing permit. While the City terminated Plaintiff's property interest on July 19, 2017, as of the date of filing this Complaint, the City has not provided a written notice of the basis for this termination or suspension.

II.     THE PLAINTIFF

2.     Plaintiff, Nationwide Recovery, Inc. ("Nationwide") is a Michigan Corporation formed in 2005. Jerry Parker is Nationwide's President and has also been a shareholder since Nationwide's formation. Since its inception and continuing through the present, Nationwide derives all of its income through the towing and storage of motor vehicles.

3.     Nationwide's towing service storage yard is located on the east side of Detroit at 11785 Freud (a/k/a 420 Lycaste) Detroit, Michigan (the "Yard"). Since 2016 and in reliance on the towing permits that City of Detroit issued, Nationwide has expended or obligated itself to repay hundreds of thousands of dollars for: improvements to the Yard; a long-term lease for the Yard; equipment necessary under City of Detroit's rules and regulations for towing companies.

III.    THE CITY OF DETROIT AND ITS POLICE DEPARTMENT

4.     The City of Detroit ("City" or "Defendant") is a municipal corporation created under the laws of the State of Michigan.

5.     The City's police department, being the Detroit Police Department ("DPD"), is an agency created under the City's authority.

6.     The DPD is charged with preserving the public peace, crime prevention, arresting offenders, protecting the rights of persons and property, enforcing the

laws of the State of Michigan and the United States, *and* the ordinances of the City. Det. City Charter, § 7-801.

7. The City's Board of Police Commissioners ("BPC") has limited supervisory control and oversight of the DPD. § 7-802.

8. The City's Mayor has sole authority to appoint the head of the DPD, being the Chief of Police, who serves at the pleasure of the Mayor. Charter §§ 5-103, 7-806(1). The Chief of Police, like other department directors within the executive branch of City government, may appoint a deputy with the Mayor's consent. Charter § 5-105.

9. With supervision from the Chief of Police, the Chief of Police's deputy is authorized to exercise all of the powers and perform all of the duties of the Chief. Charter § 5-107.

IV. <u>JURISDICTION</u>

10. This case involves the City's violation of Nationwide's procedural due process rights under 42 U.S.C. § 1983.

11. This Court has original jurisdiction under 28 U.S.C. § 1331.

V. <u>THE CITY'S POLICE AUTHORIZED TOWING PROGRAM AND THE PERMITTING PROCESS</u>

12. The Detroit City Code defines *police authorized tow* as "the towing, carrying, pushing, or otherwise transporting for a fee by a tower or towers **summoned by the police** . . .." Det. City Code § 55-1-5.

3

13. In 2010, the City enacted a permitting scheme whereby the City issues a tow permit to qualified towing companies. The permitting scheme is a set of standards, rules and regulations enacted by the BPC and approved by the Mayor ("BPC's Standards"). The BPC's Standards are attached as Exhibit D.

14. The City enacted the BPC's Standards pursuant to the Detroit City Code § 55-2-82(a), which provides:

> The Board of Police Commissioners shall establish standards, including insurance and bonding requirements, that must be met in order for a tower to qualify for police authorized tows, under this chapter, and the Police Department shall maintain a current list of such qualified towers. . . . In accordance with Section 2-111 of the Charter, the Board of Police Commissioners shall promulgate administrative rules for the Body's determination as to which towers shall be called for tows under this chapter. Such rules shall provide, as nearly as practicable, for equitable distribution of police authorized towing to all towers on the list of qualified towers.

15. The above ordinance's application is quite simple: if a towing company meets the standards, it gets placed on the DPD's list; and, if a towing company is on DPD's list, it is entitled to an equitable distribution of police authorized tows.

16. If a company meets the BPC's Standards, it is entitled to a towing permit issued thereunder.

17. The BPC's Standards do not provide for any mechanism by which the City can "suspend" a tow permit or any pre- or post-deprivation hearing for "suspensions."

VI.     NATIONWIDE'S 2016 TOW PERMIT

18.   Until July 19, 2017, Nationwide owned and possessed *Detroit Police Department Tow Permit 16-047* ("2016 Tow Permit"). (Ex. A, Tow Permit)

19.   The City issued the 2016 Tow Permit on June 1, 2016, with an expiration date of May 31, 2021, as a result of Nationwide submitting a *Towing Vendor Application Form* to the DPD. (Ex. B, Application Excerpts)

20.   The 2016 Tow Permit states:

**The City reserves the right to terminate any Tow Permit with a tow company in the event of a breach of any provision of the Towing Rules, with the review and approval of the Board of Police Commissioners.**

(Ex. A) (bolding supplied).

21.   The 2016 Tow Permit was issued pursuant to the BPC's Standards.

22.   Prior to receiving the 2016 Tow Permit, Nationwide owned and possessed *Detroit Police Department Tow Permit 11-042*, which was issued on June 20, 2011, and expired on May 31, 2016 ("2011 Tow Permit"). (Ex. C, 2011 Permit)

23.   Thus, until July 19, 2017, Nationwide has owned a tow permit continuously since June 20, 2011.

24.   In reliance on the 2016 Tow Permit, Nationwide has invested, through cash expenditures and debt financing, hundreds of thousands of dollars in improving the Yard, acquiring equipment, and ensuring that its operation complies with the BPC's Standards.

5

25.  On July 19, 2017, Nationwide was in full compliance with the BPC's Standards.

VII.  THE CITY TERMINATES NATIONWIDE'S 2016 TOW PERMIT WITHOUT PROVIDING NOTICE OR A PRE-DEPRIVATION HEARING

26.  On July 19, 2017, without providing prior notices, officers from the DPD appeared at Nationwide's Yard and took possession of Nationwide's 2016 Tow Permit.

27.  The officers either refused to provide the basis for seizing the 2016 Tow Permit or did not know of the reasons for such seizure. It was clear that these officers were following orders from their superior(s).

28.  Later that day, the City issued an internal DPD administrative message (teletype #17-0519) that provides, among other things: "Pursuant to various local rules and ordinances pertaining to police-authorized towing, the Detroit Police Department has suspended Nationwide's Police Authorized Towing Permit. . . ."

29.  On July 20, 2017, Nationwide, through its counsel, demanded that the City provide it "with a written notice detailing the reasons for this suspension." (Ex. E, Deldin Letter)

30.  Through the present day, Nationwide has not received any written or verbal notification or reason from the City explaining the basis for depriving Nationwide of its 2016 Tow Permit.

31.  The BPC's Standards provide the following:

6

> The City reserves the right to terminate any towing permit with a tow company in the event of a breach of the towing permit or any provisions of the towing permit or of these Rules provided, however, that the permit holder shall be afforded *an opportunity for a hearing* before the Board of [sic] Commissioners or the Board's designee *prior* to the effective date of any such termination. [emphasis added]

32. The BPC's Standards provide the following:

> The City may immediately terminate any towing permit with a tow company for fraud or criminal conduct by the tow company or its employees, provided however, that as soon as practicable the permit holder shall be afforded an opportunity for a hearing before the Board of [sic] Commissioners or the Board's designee following which hearing the Board shall either affirm or rescind the termination.

33. Nationwide was not provided with the opportunity for a pre-deprivation hearing prior to the City's decision to terminate or suspend its 2016 Tow Permit.

34. The City has not afforded Nationwide a post-deprivation hearing.

35. Any such post-deprivation hearing would be inadequate because, among other things: (A) due process in this situation required *prior* written notice and an opportunity for a *pre-deprivation* hearing; (B) the City has not, and will not, provide Nationwide with a written notice detailing the reasons for the termination of its 2016 Tow Permit, thereby rendering Nationwide unable to prepare for the hearing; (C) when Nationwide prevails at the hypothetical post-deprivation hearing, the BPC's Standards do not allow for the recovery of compensatory and other damages and attorney fees; and (D) the post-deprivation hearing would not

allow Nationwide to challenge the constitutionality of the City's established policies and procedures.

## VIII. PRELIMINARY DAMAGES

36. Despite the short period of time between the City's action and the filing of this Complaint, Nationwide's damages are likely to be substantial.

37. In the towing industry, law enforcement accounts are quite lucrative compared to road service motor clubs (AAA), fleet towing, and other private work. Towing companies earn their revenue through two services: towing and storage. With most private work, the vehicle is not going back to the company's storage yard. With police towing, on the other hand, nearly every vehicle goes to the towing company's storage yard, thereby generating storage fees with minimal added cost on a per vehicle basis. Vehicles in storage also lead to "second tows" where the towing company transports the vehicle from the storage yard to a collision shop or elsewhere.

38. Many lucrative bidding opportunities for police work require towing companies to disclosure if they have ever been terminated or suspended from a law enforcement contract.

39. For example, in late July or early August it is expected that the Michigan State Police will release its invitation to bid. These are contracts worth millions of dollars in revenue. Nationwide will have to disclose that it's 2016 Tow Permit was

terminated or suspended, yet won't even be able to tell the Michigan State Police the reason for the suspension.

40. Nationwide's reputation has also been damaged and will suffer further damage.

41. Nationwide's damages from lost business and bidding opportunities, as well as that to its reputation, is likely to be in the millions of dollars.

## COUNT I – VIOLATION OF 42 U.S.C. § 1983

42. Nationwide incorporates all prior paragraphs as though restated herein.

43. 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

44. Nationwide has a protected property interest in the 2016 Tow Permit. *Cf. Lucas v. Monroe Cty.*, 203 F.3d 964, 978 (6th Cir. 2000) (holding that the plaintiff towing company did not have a protected property interest in remaining on Monroe County's standby wrecker list because the plaintiff could not point to any "ordinance, contract or other 'rules of mutually explicit understandings' that support their claim to remain on the stand-by list.") *and, Durham v. Jones*, 698 F2d 1179 (11th Cir. 1983) (plaintiff towing company did not have a protected property

9

interest in being on the local towing list, when he had never been placed on the list, the local government did not have any printed rules or regulations that governed the list, and no formal application produced existed to get on the list) *with,* Det City Code § 55-2-82(a) (City ordinance establishing the towing list), *and,* Ex. D, BPC's Standards (written regulations governing issuance of tow permits), *and,* Ex. A, Tow Permit *and,* Ex. B, Application Excerpts.

45. Nationwide was entitled to rudimentary due process, which requires: (i) a timely written notice that details the reasons for the proposed action; (ii) an effective opportunity to defend by confronting adverse witnesses and being allowed to present witnesses, evidence, and arguments; (iii) a hearing examiner other than the person(s)/body that made the decision or determination under review; and (iv) a written statement of findings.

46. The suspension or termination of Nationwide's 2016 Tow Permit was made by a policy-making official(s) or by persons acting through delegated authority and under color of law.

47. The City, through a formal policy or policy approved by high policymaking official(s) or unofficial customs, acting under color of law, authorized the termination or suspension of Nationwide's 2016 Tow Permit.

48. The BPC's Standards and their failure to require pre-deprivation notice and an opportunity for a hearing, among other aspects of rudimentary due process, constitute an established City procedure that itself violates due process.

49. The City, as a result of established City procedure that itself violates due process, suspended or terminated Nationwide's 2016 Tow Permit without due process of law.

50. As a direct and proximate result of the foregoing, Nationwide has suffered, and will continue to suffer, damages.

## Prayer for Relief

Nationwide Recovery, Inc. respectfully requests that this Court enter Judgment in its favor and against the City of Detroit and:

    A. Enter an Injunction, preliminarily and permanently enjoining the City from: violating Nationwide's procedural due process rights; enforcing any of its policies found to violate due process; suspending or terminating Nationwide's 2016 Tow Permit; and any other act that necessary to protect Nationwide's interests in its 2016 Tow Permit;

    B. Declare the rights of the parties herein, including that Nationwide was entitled to prior notice and a pre-deprivation hearing;

    C. Award Nationwide compensatory and punitive damages in an amount that exceeds $1,000,000 plus costs, interest and Attorney fees.

        Respectfully submitted:

        /s/ Marc A. Deldin
        Deldin Law
        48 S. Main, Suite 3
        Mount Clemens, MI 48043
        (586) 741-8116
        marc@deldinlaw.com
        P71041

July 24, 2017

## JURY DEMAND

Nationwide Recovery, Inc. demands a jury trial on all issues so triable.

        Respectfully submitted:

        /s/ Marc A. Deldin
        Deldin Law
        48 S. Main, Suite 3
        Mount Clemens, MI 48043
        (586) 741-8116
        marc@deldinlaw.com
        P71041

July 24, 2017