UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN

NATIONWIDE RECOVERY, INC.,                Case No. 4:17-cv-12378
                                          Hon. Linda V. Parker
     Plaintiff/Counter Defendant,        Mag. Jdg. Stephanie Dawkins Davis

vs.

CITY OF DETROIT,

     Defendant/Counter Plaintiff/Third Party Plaintiff,

vs.

JERRY PARKER et al,

     Third Party Defendants.

_____

MOTION TO DISMISS

Plaintiff/Counter-Defendant, Nationwide Recovery, and the Third-Party

Defendants, Jerry Parker, Louay M. Hussein, Hussein M. Hussein, and Sky Line

Enterprise 1.0, Inc. (collectively, "Nationwide Parties") bring this Motion to

Dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  For the reasons outlined in

the accompanying brief, the Nationwide Parties request that this Court dismiss the

City of Detroit's Counterclaim and Third-Party Claims (Dkt. # 18) and grant any

other relief authorized by law.

On September 26, 2017, the Nationwide Parties conducted a telephone

conference with Ronald Acho, counsel for the City of Detroit, pursuant to LR 7.1.

The Nationwide Parties conveyed the specific issues that they intend to raise in this motion. Mr. Acho stated that he intended to start discovery this week and begin scheduling depositions and, as such, he could not provide concurrence in the relief requested in this Motion.

Respectfully submitted:

/s/ Marc A. Deldin
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043
(586) 741-8116
marc@deldinlaw.com
P71041

September 26, 2017                    *Attorney for the Nationwide Parties*

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN

NATIONWIDE RECOVERY, INC.,    Case No. 2:17-cv-12378
    Hon. Linda V. Parker
    Plaintiff/Counter Defendant,    Mag. Jdg. Stephanie Dawkins Davis

vs.

CITY OF DETROIT,

    Defendant/Counter Plaintiff/Third Party Plaintiff,

vs.

JERRY PARKER et al,

    Third Party Defendants.
_____

BRIEF IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ................................................... iii

CONTROLLING AUTHORITY ........................................................................ v

INTRODUCTION AND SUMMARY ................................................................ 1

STATEMENT OF RELEVANT FACTS .......................................................... 3

I.    Moving Parties, Procedural Facts and Current Posture ....................... 3

II.   Nationwide Specializes in Locating and Recovering Stolen Vehicles ............... 3

III.  The City Retaliates: Conjecture and Innuendo Form the Basis for the City's
      Auto-Theft and Tax Evasion Claims ................................................ 4

IV.   The City Retaliates: The Administrative Lot Audit ............................ 7

V.    The City Retaliates: False Accusations of Tax Fraud ......................... 8

VI.   The City Retaliates: Attacking Nationwide's Managers and Shareholders ...... 8

STANDARD OF REVIEW ............................................................................ 9

ARGUMENT ............................................................................................ 10

A.    The City Fails to State a Claim for Public Nuisance (Count I) ............ 10

B.    The City Fails to State a Claim for Accounting (Count II) ................. 13

      1. Towing Revenues ........................................................................ 13

      2. Income Tax .................................................................................. 14

C.    The City Fails to State a Claim for Fraud (Count III) ....................... 15

D.    Fraudulent Concealment (Count IV) Is Not A Separate Cause of Action ....... 17

E.    The City Fails to State Claims for Common Law and Statutory Conversion
      (Count V) ................................................................................ 18

F.    The Court Lacks Subject Matter Jurisdiction over Collection of Delinquent
      Tax (Count IV) .......................................................................... 20

G.    The City's Claim for Unjust Enrichment (Count VII) Fails ................. 23

H.    The City's Conspiracy Theory Fails Without An Underlying Tort ........... 24

CONCLUSION .......................................................................................... 25

## STATEMENT OF THE ISSUES PRESENTED

I.      Has the City stated a claim for public nuisance when it has failed to allege how the Nationwide Parties created a cognizable public nuisance; failed to identify the property owned or controlled by each of the Nationwide Party defendants; failed to allege that each Nationwide Party defendant employed others who created a nuisance; and failed to identify the public right that is allegedly subject to Nationwide's interference?

II.     Has the City stated a claim for an accounting when the City can determine the alleged damages through standard discovery and where the Court lacks jurisdiction over such a cause when it relates to allegations of unassessed tax debt?

III.    Has the City stated a claim for fraud where it has failed to state all averments with particularity as to the alleged time, place, content, fraudulent scheme, intent, and injury concerning each Nationwide Party defendant?

IV.     Has the City stated a claim for fraudulent concealment when the doctrine exists only to extend the statute of limitations when evidence suggests the fraud was concealed and not as a cause of action?

V.      Has the City stated a claim for conversion of money/assets when it did not entrust particular money to the Nationwide Parties' care and did not possess an ownership interest in money that never left the Nationwide Party defendants' care?

VI.     Has the City stated a claim for collection of delinquent tax when the Court lacks subject matter jurisdiction, and the City has failed to exhaust its administrative remedies?

*The Nationwide Parties answer "No" to the above.*

CONTROLLING AUTHORITY

Fed. R. Civ. Pro. 12(b)(1), (6)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

## INTRODUCTION AND SUMMARY

On July 24, 2017, Nationwide Recovery filed this §1983 claim against the City of Detroit after the City terminated its Towing Permit without providing for a pre-deprivation hearing.  Subsequently, the City responded with intimidation and bold accusations that Nationwide Recovery engaged in racketeering activity. The bullying culminated with the City's Second Amended Counterclaim and Third-Party Claim against Nationwide, its employees, attorney, and other companies associated with Nationwide, but not associated with its Towing Permit.

The City's recent pleading requires 64 pages because it says nothing at all. The counterclaim is lengthy because it relies upon conclusory allegations centering on the City's assertion of a criminal enterprise.  The claims extend beyond the controversy at issue.

The retaliatory nature of the City's counterclaim is evident from the face of the City's claims. They are so far-reaching and unsupported by even the allegations in its complaint. The following are among the deficiencies in the City's complaint:

- The City attempts to expand the definition of public nuisance to include any alleged "criminal and fraudulent conduct," which is beyond the scope of the express statute and the cases interpreting it.

- The City sets forth alleged fraud and unjust enrichment claims without stating the manner, means, time and activity each Nationwide Party defendant is alleged to have participated facilitating the fraud and/or unjust enrichment.  In that respect, it has fails to meet the heightened pleading standard for these claims.

- The City asks for the extraordinary remedy of an accounting to determine damages it alleges are owed from towing revenue, which the City could obtain through discovery.

The City pursues these fact-less counts merely to harass and intimidate Nationwide Recovery and its representatives.

The City's Counterclaim does not meet the pleading standard required under Rule 12(b)(6), the *Twombly/Iqbal* line of cases, and Rule 9(b). With a single factual allegation – that Nationwide allegedly participated in and profited from the theft of a Jeep – the City asserts five causes of action, some of which are not even valid causes of action.

The Court must dismiss the entire Counterclaim.

## STATEMENT OF RELEVANT FACTS

I.  Moving Parties, Procedural Facts and Current Posture

Plaintiff, Nationwide Recovery is a towing company that, until recently, held Detroit Police Department ("DPD") Towing Permit #16-047. (¶¶ 27, 128) That Towing Permit did not expire until 2021. (¶ 27)

On July 17, 2017, the City terminated Nationwide's towing permit "pursuant to Directive 204.4 of the Detroit Police Department Manual," although the City fails to state what the directive authorizes.

Nationwide initially filed this action as a single count §1983 procedural due process claim promptly after the City terminated its towing permit without any pre-depravation hearing. Following an initial counterclaim, a motion to dismiss, and several amendments, the City has filed a Second Amended Counterclaim and Third Party claim against Nationwide, the Nationwide Parties, their counsel, and Metrotech Auto Sales. At the pleading stage, the City has defended this action through a very aggressive offense.

II.  Nationwide Specializes in Locating and Recovering Stolen Vehicles

The City's surveillance showed that Nationwide "operate[s] using up to four tow truck drivers, and **six to eight other vehicles**, to 'locate' stolen cars." (¶ 105)

3

(emphasis added) Nationwide doesn't use the City's DPD to recover[1] stolen vehicles located in the City. Instead, it uses an officer deputized through Wayne County and with citywide jurisdiction. (¶ 59) When Nationwide recovers a vehicle, an officer from the recovering law enforcement agency is <u>not</u> present. (¶ 60)

This practice infuriates the City because the DPD has a *policy* that requires a DPD officer's physical presence on the scene when the DPD recovers a stolen vehicle. (¶¶ 49, 73, 136) Other jurisdictions permit their officers to recover remotely and not travel to the scene. (¶ 60) This has led to a turf war between two law enforcement agencies. (¶ 61 "often led to disagreements")

III.   <u>The City Retaliates: Conjecture and Innuendo Form the Basis for the City's Auto-Theft and Tax Evasion Claims</u>

The DPD believes, "upon information and belief," that Nationwide and Louay Hussein "have been improperly incentivizing car thieves to assist in the theft of automobiles in the City of Detroit." (¶ 104) DPD also received information that a driver for Nationwide "was paying $50-$100" for tips on stolen cars, (¶ 106), and Louay Hussein "has even admitted that Nationwide Recovery offers monetary incentives to individuals who provide tips relating to stolen vehicles." (¶ 108)

---

[1] In the towing industry, "recover" refers to a law enforcement officer's act entering the vehicle's found status in the law enforcement information network. *See, e.g.* MCL 257.252a

In May 2016, the Detroit Police Department's Commercial Auto Theft Unit ("CATS") observed a car thief drop a cell phone and found "either phone calls or text messages" between the car thief and Louay Hussein. (¶¶ 52-3) One such text message was sent to Louay Hussein stated "348 Highland in the alley". (¶ 55) CATS did not pursue criminal charges because it lacked evidence. (¶ 56)

In August 2016, Nationwide's business recovering stolen vehicles greatly increased. (¶ 57) Sometimes Nationwide recovers stolen vehicles "before they had even been reported stolen." (¶ 58) Nationwide was recovering stolen vehicles in the City of Detroit using other police agencies, such as Wayne County, and the officer from that agency was not on scene for the recovery. (¶ 59, 60)

Starting in March 2017, the DPD began a three-month stolen car recovery initiative. (¶ 75) Nationwide rarely participated during the first month but regularly did so in the second and third months. (¶¶ 75-80) Nationwide outperformed its competitors, recovering "217 vehicles, which was 56 more than the next highest tow company, which had fully participated in the program." (¶¶ 81-82) As compared to its competitors, Nationwide recovered "far more new model vehicles than any other towing company involved in the program." (¶ 85)

In May 2017, a Highland Park police officer ("McMahon") that was deputized by Wayne County "was not sending the required notifications through LEIN to the Commercial Auto Theft Unit." (¶ 87) This information is necessary to

start the victim notification process. (¶ 88) "An indefinite but substantial number of stolen vehicles reported by [McMahon] were quickly recovered by Nationwide Recovery." (¶ 89) The delay caused through a lack of notification results in increased storage fees to Nationwide's benefit. (¶¶ 90-92) According to the City, Nationwide referred these victims to "MetroTech (sic) Collision and/or MetroTech Sales," and allegedly offered to waive the towing fees if the vehicle went there. (¶¶ 93-4)

The City claims that Nationwide recovered three vehicles under "suspicious circumstances." First, in May 2017, Nationwide, through McMahon, recovered a rental vehicle before the vehicle was reported stolen. (¶¶ 97, 99) The car was found next to an abandoned building and had its tires removed. (¶ 96) Next, a resident reported her vehicle stolen at 7:02 AM on July 17, 2017. The theft was captured on videotape. Nationwide recovered the vehicle at 7:19 AM, and reported that the vehicle's "wheels and tires were missing, the rear window was broken, and there were push marks on the rear of the vehicle." (¶¶109-12, 114-6, 120)

On July 20, 2017, according to the City's pleading, the City "suspended" Nationwide from its towing rotation under the authority of "Directive 204.4 of the Detroit Police Department Manual." (¶ 128)

On July 28, 2017, the DPD observed a car thief push a vehicle into an alley off of Lawton. (¶ 130) Within five minutes, Nationwide pulled up to the vehicle. (¶

130) The Highland Park officer, McMahon, arrived 20 minutes later. (¶ 131) The

DPD detail never observed Nationwide's trucks in the area before "the find." (¶

132)

On August 2, 2017, an unnamed man approached a DPD officer and "asked

if he could report the stolen vehicle to Nationwide Recovery and indicated that

Nationwide Recovery paid him $50.00 for information on any stolen vehicle." (¶

134)

IV.   The City Retaliates: The Administrative Lot Audit

In August 2017, after Nationwide filed this lawsuit, Nationwide submitted

83 "Abandoned Vehicle Reports" to the DPD. (¶ 135) This caused the DPD to

perform a yard audit at Nationwide. Of these 83 vehicles, 80 dated back to 2016, (¶

153), and "14 were stolen vehicles that needed to be administratively recovered

[and of these 14,] Nationwide . . . could not produce 4 impound cards . . . ., 11 **did**

**not** have control numbers issued by the Detroit Police Department . . . [and] 2 such

vehicles dated back to 2015." (¶¶ 140-147) DPD typically handwrites impound

cards, but Nationwide produced "[a] significant amount" of typed impound cards.

(¶ 154-5) At the end of this yard inventory, "Louay M. Hussein handed over an

additional seven impound cards, six of which were for stolen vehicles, and asked

that the vehicles be entered into LEIN as abandoned vehicles." (¶ 157-8) The City

claims this violates MCL 257.252d(5).

V.   <u>The City Retaliates: False Accusations of Tax Fraud</u>

The City adopted the Uniform City Income Tax Ordinance and, despite this, alleges that the following parties failed to file City income tax returns or pay required income taxes.

| Party Name | Alleged Violations | Source |
|---|---|---|
| Nationwide | Failed to file accurate returns or pay income taxes | ¶ 176 |
| MetroTech Collision | Failed to file accurate returns or pay income taxes | ¶ 178 |
| Jerry Parker | Failure to file returns from 2010 to 2016 and failed to pay the taxes due | ¶ 181 |
| Hussein M. Hussein | Failed to file returns from 2010 through 2016 and failed to pay the taxes due | ¶ 182 |
| Louay M. Hussein | Failed to file returns from 2010-2013, and 2016, and failed to pay the taxes due | ¶ 183 |

VI.   <u>The City Retaliates: Attacking Nationwide's Managers and Shareholders</u>

Louay Hussein, Jerry Parker, Hussein Hussein and Sky Line Enterprise join in this motion with Nationwide. Louay Hussein is the "most central" figure at Nationwide Recovery. (¶ 34) Jerry Parker and Hussein Hussein are shareholders and representatives of Nationwide Recovery. (¶¶ 3, 4) Sky Line Enterprise 1.0, Inc. allegedly operates a business at "3101 [sic] Michigan Avenue," and is referred to as "MetroTech [sic] Collision." (¶¶ 7, 8) Louay M. Hussein is the owner. (¶ 10)

8

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). Rather, to survive a 12(b)(6) motion, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id.* at 570. *See also Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. This analysis separates well-pleaded facts from conclusory allegations that are not entitled to a presumption of truth. *Iqbal*, 556 U.S. at 681.

Rule 12 (b)(1) provides for the dismissal of an action for lack of subject matter jurisdiction. A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack). *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack goes to the question of whether the

plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the

allegations of the complaint as true for purposes of Rule 12(b)(1) analysis. *Id.* A

factual attack challenges the factual existence of subject matter jurisdiction. In the

case of a factual attack, a court has broad discretion with respect to what evidence

to consider in deciding whether subject matter jurisdiction exists, including

evidence outside of the pleadings, and has the power to weigh the evidence and

determine the effect of that evidence on the court's authority to hear the case. *Id.*

Plaintiff bears the burden of establishing that subject matter jurisdiction exists.

*DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

ARGUMENT

**A. <u>The City Fails to State a Claim for Public Nuisance (Count I)</u>**

The term "public nuisance" contemplates minor criminal offenses based on

some interference with the interest of the community or comfort or convenience of

the general public who come in contact with it in the exercise of a public right.

*Garfield Tp. v. Young*, 348 Mich. 337 (1957). For example, the public nuisance

statute, MCL 600.3801, expressly prohibits the use of a property for prostitution,

gambling, illicit transfer of intoxicants, animal fighting, or human trafficking. The

purpose of the statute is to protect the public from misuse of property, buildings,

and other areas publicly enjoyed from the nuisance that affects the community. The

City's public nuisance count alleging that "criminal and fraudulent conduct,"

10

[purportedly relating to vehicle theft] constitutes a public nuisance fails to state a claim.

A public nuisance is an "unreasonable interference with a right common to the general public." *Wagner v. Regency Inn Corp.*, 186 Mich. App. 158, 163 (1990), *citing* Restatement (Second) of Torts § 821B. "Unreasonable interference" includes:

> (1) conduct that significantly interferes with public health, safety, peace, comfort, or convenience; (2) conduct that is proscribed by law; or (3) conduct of a continuing nature that produces a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect on public rights.

*Id.* at 163. A court may impose nuisance liability where "(1) the defendant has created the problem, (2) the defendant owned or controlled the property from which the nuisance arose, or (3) the defendant employed another to do work that he knew was likely to create a nuisance." *Gelman Sciences v. Dow Chem. Co.*, 202 Mich. App. 250, 252 (1993). A public nuisance is a nuisance that affects an interest common to the general public. *Cloverleaf Car Co v. Phillips Petroleum Co.*, 213 Mich. App. 186, 540 NW2d 297 (1995).

The City failed to allege the legal elements of a claim for public nuisance. The City has failed to allege how each counter/third-party defendant created a cognizable public nuisance. The City has failed to identify how each counter/third-party defendant owned or controlled the property creating the nuisance, as well as

11

identifying the property from which the nuisance arose.  The City has also failed to allege that Nationwide Parties employed others to do work that created a nuisance. And the City has completely ignored the "public right" aspect of its claim.

The conduct alleged, if accepted as true, does not rise to the level of a public nuisance. Nationwide recovers stolen motor vehicles using a deputized Wayne County Sheriff's Deputy, and Nationwide is remarkably successful. The City notes that Nationwide deploys four tow trucks and 6 to 8 other vehicles to locate stolen cars, often finding them *after* they are stolen but *before* they are reported stolen. The City even admits that a law enforcement officer, although not the DPD, authorizes the removal of the vehicle.

The City fails to grasp that the law contemplates the removal of stolen automobiles *before* the owner *reports the* vehicle stolen. The Special Antitheft Laws provide that "A police agency . . . may provide for the immediate removal of a vehicle from public or private property . . . in any of the following circumstances: If there is reasonable cause to believe that the vehicle or any part of the vehicle is stolen." MCL 257.252d(1)(d). This statute does not limit the recovery only to vehicles "reported as stolen." Common sense dictates that there is reasonable cause to believe a vehicle is stolen when it is missing its wheels and (1) parked next to an abandoned building; or (2) has broken windows and push marks. These are both examples cited by the City in its pleading.

The City has failed to state a claim and this Court must dismiss its Public Nuisance (Count I) claim.

## B. **The City Fails to State a Claim for Accounting (Count II)**

The City cannot maintain an accounting to determine (1) towing revenues, and (2) alleged unreported income taxes. (¶200). As to towing revenues, the City has not pled a series of mutual demands nor has it supported an inference that discovery would be inadequate to ascertain towing revenues. Likewise, the allegations relating to unreported income taxes fail because this Court lacks subject matter jurisdiction over those claims.

### 1. Towing Revenues

An action for accounting seeks an equitable remedy. *Boyd v. Nelson Credit Ctrs., Inc.*, 132 Mich. App. 774, 779–80, 348 N.W.2d 25, 27 (1984). "An accounting is an extraordinary equitable remedy and is only available when legal remedies are inadequate." *McDonald v. Green Tree Servicing, LLC*, No. 13–12993, 2014 WL 1260708, at *8 (E.D. Mich. Mar. 27, 2014) (citing *Bradshaw v. Thompson*, 454 F.2d 75, 79 (6th Cir.1972)). An accounting is not available where the action is for a specific amount due under the contract. *Boyd v. Nelson Credit Ctrs., Inc.,* 132 Mich. App. 774, 779, 348 N.W.2d 25, 27 (1984). Similarly, an accounting is not available where discovery can reveal the amount of damages.

*Cyril J. Burke, Inc. v. Eddy & Co.*, 332 Mich. 300, 303, 51 N.W.2d 238, 239 (1952). "To sustain a bill for an accounting there must be mutual demands, a series of transactions on one side, and payments on the other. Where all the items are on one side, there can be no accounting." *Boyd*, 132 Mich. App. at 779, 348 N.W.2d at 27 (internal quotation marks and citation omitted). Indeed, "[i]n light of the broad discovery available to litigants, accounting actions are of dubious utility." *Gen. Ret. Sys. of City of Detroit v. Onyx Capital Advisors*, LLC, No. 10–11941, 2011 WL 4528304, at *13 (E.D. Mich. Sept. 29, 2011) (citing *Digital 2000, Inc. v. Bear Commc'ns, Inc*., 130 Fed. Appx. 12, 22 (6th Cir. 2005)).

Here, the City seeks an accounting to determine towing revenues. Under the towing policy, the City is afforded a specific administrative fee amount for each vehicle recovered. The City's complaint contains numerous statements demonstrating its ability to track tows and payments made. (¶¶75, 82, 85). Consequently, the complaint does not support an inference that any towing transactions at issue are so complex that ordinary discovery procedures would be inadequate. The amount of any such damages owed relating to towing revenue can be determined through discovery making accounting an extraordinary remedy.

2.  Income Tax

The real basis for the City's request for an accounting relates to its allegations that the Nationwide Parties underreported, or failed to report/collect employee

14

income taxes, which the City has also pled as a separate count in its complaint. A circuit court has no jurisdiction to issue a declaratory judgment unless it has jurisdiction over the underlying controversy. See *Fornell v. Fornell Equipment, Inc*., 39 Mich. App. 709, 723, 198 N.W.2d 694 (1972*), rev'd on other grounds* 390 Mich. 540, 213 N.W.2d 172 (1973). The Supreme Court specifically approved the reasoning of the Court of Appeals on the jurisdictional issue. 390 Mich. 549.

This Court lacks jurisdiction over allegations of underreported or unreported income tax claims. As explained in subsection (F) below, this Court lacks subject matter jurisdiction because the Uniform City Income Tax Act (UCITA), MCL 141.601 et seq., which is codified in the City's Income Tax Ordinance ("Ordinance"), §18-10-1 et seq., provides the exclusive remedies for assessing and collecting underreported/unreported city income taxes. To that end, any requests for accounting relating to unreported/underreported taxes must fail, and the City must adhere to the remedies provided in the Ordinance.

## C. <u>The City Fails to State a Claim for Fraud (Count III)</u>

An actionable claim for fraud requires a showing:

> (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Lawrence M Clarke, Inc. v. Richco Constr. Inc.*, 489 Mich. 265, 283–284 (2011).

15

The City's fraud allegations do not meet the specificity requirements of pleading under Federal Rule of Civil Procedure 9(b). That rule requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). A party can satisfy the requirements of Rule 9(b) through alleging "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [the other party]; and the injury resulting from the fraud.' " *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993) (quoting *Ballan v. Upjohn Co.,* 814 F. Supp. 1375, 1385 (W.D. Mich.1992)); *see also Vild v. Visconsi,* 956 F.2d 560, 567 (6th Cir.1992). <u>A party's allegations must satisfy Rule 9(b)'s particularity requirement concerning each element of the claim of fraud and concerning each defendant against whom fraud is alleged.</u> *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.,* 940 F. Supp. 1101, 1114 (W.D.Mich.1996)(emphasis added).

Here, the City's complaint does not satisfy Rule 9(b)'s particularity requirement with regard to each element of fraud and with regard to each Nationwide Party. Rather the City sets forth general allegations of a fraudulent scheme involving purported representations by defendants (the time, place, and content of which were not stated as to each Nationwide Party) and general observations that Nationwide Recovery was allegedly recovering more cars than its

16

competitors and allegedly kept poor records. As further argued in subsection (F) below, the City's Income Tax Ordinance preempts the City's allegations relating to unpaid income taxes.

The City's allegations, which are damaging to the Nationwide Parties' businesses and reputations and void of particulars, should be dismissed for failing to state a claim.

### D. Fraudulent Concealment (Count IV) Is Not A Separate Cause of Action

Fraudulent concealment is a doctrine that tolls the statute of limitations for fraud.  It does not state an independent cause of action. The theory arises from a compromise between the courts regarding whether the statute of limitations commences when the act is perpetrated or discovered. *Ramsey v. Child, Hulswit & Co.,* 198 Mich. 658, 165 N.W. 936 (1917). *Ramsey* held that the legislature effected a compromise between the rule at law and rule at equity.  Under the compromise, in addition to the six-year period of limitations applicable to frauds, the legislature provided that if the cause of action was fraudulently concealed, it could be brought two years after it was discovered or should have been discovered. *Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 230, 661 N.W.2d 557, 559 (2003).

Therefore, the City's allegations of fraudulent concealment do not state a cause of action, but rather, would merely serve to toll the statute of limitations if

evidence suggested the alleged fraud was concealed and could not be discovered earlier.  The Court must dismiss this count. It doesn't exist.

### E. The City Fails to State Claims for Common Law and Statutory Conversion (Count V)

Michigan law distinguishes between claims involving the alleged conversion of money and the alleged conversion of other property. See, e.g., *Lawsuit Fin., LLC v. Curry*, 261 Mich. App. 579, 683 N.W.2d 233, 241 (2004); *Sudden Svc., Inc. v. Brockman Forklifts, Inc*., 647 F. Supp. 2d 811, 815 (E.D. Mich. 2008). A claim for the conversion of money is available only in very narrow circumstances. *Id.*

To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care. *Check Reporting Services, Inc. v. Michigan Nat'l Bank–Lansing*, 191 Mich. App. 614, 478 N.W.2d 893, 900 (1991). It is clear that when the dispute is over moneys owed, conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken. See *Trail Clinic, PC v. Bloch*, 114 Mich. App. 700, 319 N.W.2d 638 (1982) (allowing a conversion claim when one party appropriated checks payable to another party); *Rennie v. Pentagon Refining Co.*, 280 Mich. 1, 273 N.W. 325 (1937) (conversion found where one party appropriated funds from another party's brokerage account).

18

The City alleges the Nationwide Parties converted their money by allegedly failing to pay towing receipts and income taxes.  First, the City has not shown that it had an ownership interest in the alleged unpaid taxes because the alleged money never left any defendants' possession, and a person cannot convert his own property. *Hertel v. Mortg. Elec. Registration Sys., Inc.,* No. 1:12-CV-174, 2013 WL 1874718, at *9 (W.D. Mich. May 3, 2013) citing *Foremost Ins. Co. v. Allstate Ins. Co*., 439 Mich. 378, 486 N.W.2d 600, 606 (1992).

Second, a failure to pay money owed does not constitute conversion unless identifiable, specific bills are involved:

> [I]t is well settled that an action for conversion of money can only be maintained if there was an obligation to return or deliver the specific physical money at issue.... There was no such obligation here; plaintiff demanded payment of a specific sum, not the return of specific earmarked bills. Therefore, the conversion claim cannot be established as a matter of law ....

*Hertes* citing *Rybar v. Al Serra Chevrolet, Inc.*, No. 194277, 1998 WL 1989740, at *2 (Mich. App. Oct. 2, 1998); see also, e.g., *Head v. Phillips Camper Sales & Rental, Inc*., 234 Mich. App. 94, 593 N.W.2d 595, 603 (Mich. App.1999) ("To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted to his care."). Thus, even if payments for towing services were owed to the City — it still fails to make out a conversion claim because it seeks payment of a specific sum and not specific physical money. *Hertel, infra*.

19

Here, the facts do not support the claim of conversion with regards to either the towing receipts or taxes/assets. The City did not entrust specific money to the care of the Nationwide Parties; instead, the parties had a towing agreement which provided for payment of certain fees to the City for towing services. The City's cause of action arises from the alleged non-payment of towing fees and unreported income taxes and not the appropriation of specific funds in violation of a separate legal duty. *Sudden Serv., Inc. v. Brockman Forklifts, Inc*., 647 F. Supp. 2d 811, 815–16 (E.D. Mich. 2008). As a result, the City's conversion claims fail and should be dismissed.

## F. The Court Lacks Subject Matter Jurisdiction over Collection of Delinquent Tax (Count IV)

The Uniform City Income Tax Act (UCITA), MCL 141.601 et seq., establishes the exclusive procured for the collection of claimed taxes and the City cannot create a cause of action out of thin air solely for intimidation. UCITA is codified in the City's Income Tax Ordinance ("Ordinance"), §18-10-1 et seq. The Ordinance sets forth the definitions, calculations and enforcement of city income tax. The Ordinance separates enforcement into two categories: (1) those where the employer or taxpayer has filed a return showing taxes owed but has failed to pay, and (2) those where no return has been filed.

In matters where the employer or taxpayer has filed a return showing taxes due but has not paid, no assessment is required, and the City can sue in court for collection of the unpaid debt. Ordinance, §18-10-17(c). When no returns are filed, however, the Ordinance does not provide a private cause of action in court to collect the alleged tax debt, and federal courts are justifiably reluctant to find implied causes of action in state statutes due to federalism concerns. *See, e.g., Watson v. City of New York,* 92 F.3d 31, 36 (2d Cir.1996); *Tr. of Boston Univ. v. ASM Commc'n, Inc.,* 33 F. Supp. 2d 66, 75 (D.Mass.1998). "[T]he authority to impose a tax must be expressly authorized by law; it will not be inferred." *Paris Meadows, LLC v. Dep't of Treasury*, 445 Mich. 470, 477 (1994).

When a taxpayer doesn't file a return but the City claims taxes are owed, the Ordinance requires the administrator to serve a proposed assessment on the employer or taxpayer, after which the employer or taxpayer can protest, followed by a hearing. §18-10-17(b)(1). After the hearing, the administrator issues and serves a final assessment. §18-10-17(b)(2). This final assessment may be appealed to the Income Tax Board of Review, which then holds a hearing and issues a ruling. §18-10-21. That decision may then be appealed to the State Commissioner of Revenue, and further appealed in the court of appeals and Michigan Supreme Court. §18-10-23. Subsequently, the Ordinance allows the imposition of a fine,

authorizes the collection of interest and penalties, and provides for prosecution as a misdemeanor. § 18-10-25; MCL § 141.699.

Here, the City admits the amount of the alleged taxes are unspecified and unknown, stating defendants "currently owe an amount to be determined through the course of discovery." (Counter-Complaint, ¶¶175-184, 245). The City does not allege that the Nationwide Parties reported but did not pay a tax obligation, which is the only basis the Ordinance provides for a private cause of action. Rather, the City has completely ignored the enforcement steps set out in the Ordinance. This includes notice, assessments, an opportunity to be heard, and access to further appeals. The statutory remedy for collecting taxes is the exclusive remedy, and the statute precludes the taxing authority from maintaining an action at law. *See Bankers' Tr. Co. of Detroit v. Russell*, 270 Mich. 568, 572 (1935); see also *City of Detroit v. Jepp*, 52 Mich. 458 (1884). The City cannot merely assert that the Nationwide Parties owe tax debt and attempt to collect unspecified amounts through litigation and without due process.

The Court lacks subject matter jurisdiction over this claim, and the City has failed to exhaust its administrative remedies. Further, the City's Ordinance provides the exclusive remedies for enforcement. The City also fails to state a claim upon which this Court can grant relief. For these reasons, the Court should dismiss Collection of Delinquent Tax (Count IV).

### G. **The City's Claim for Unjust Enrichment (Count VII) Fails**

To state a claim for unjust enrichment, a plaintiff must allege "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Morris Pumps v. Centerline Piping, Inc.,* 273 Mich. App. 187, 729 N.W.2d 898, 904 (2006).

The City has failed to state a claim for unjust enrichment. The City alleges the Nationwide Parties "received the benefit of a significant amount of the City of Detroit's money by virtue of their above-referenced fraud, embezzlement, conversion, and other unlawful, wrongful and inequitable actions." (Counter-complaint ¶256).  In light of the City's overly broad and vague allegations and group pleading, it is impossible for the Court to determine it has sufficiently pleaded an unjust enrichment claim as to Nationwide Recovery, Metrotech Collision, Metrotech Sales, Jerry Parker, Hussein M. Hussein, and Louay M. Hussein.

A single allegation (¶257) describes the conferred benefit as a being a "significant amount of money" [purportedly obtained] via alleged illegal acts. This charge does not constitute a benefit conferred by the City on each defendant. To state an unjust enrichment claim against these the Nationwide Parties, the City must plausibly allege that each counter/third-party defendant was unjustly enriched at the City's expense. See, e.g., *Kalamazoo River Study Group v. Rockwell Int'l*, 3

F. Supp. 2d 815, 818 (E.D. Mich.1997) ("Th[e] causation requirement is an essential element of [counter-plaintiff's] [unjust enrichment] claim .... [U]njust enrichment ... require[s], at a minimum, proof of causation...."). In pleading an unjust enrichment claim, the City must, among other things, sufficiently allege a connection between each defendant's actions and enrichment, on one hand, and its losses on the other hand. *Kerrigan v. ViSalus, Inc.*, 112 F. Supp. 3d 580, 615 (E.D. Mich. 2015).

The City has failed to meet the standard and its claim for unjust enrichment should be dismissed.

### H. The City's Conspiracy Theory Fails Without An Underlying Tort

A claim of civil conspiracy requires an underlying actionable tort (or crime). *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257 Mich. App. 365, 384 (2003). "The conspiracy standing alone without the commission of acts causing damage would not be actionable. The cause of action does not result from the conspiracy but from the acts done." *Fenestra Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 594 (1966).

Since the City's tort claims fail, it cannot maintain an action for civil conspiracy. The Court must dismiss Count IX.

CONCLUSION

For the reasons set forth above, the Nationwide Parties request that this Court dismiss the City's Second Amended Counterclaim and Third-Party Claim in its entirety, and award sanctions for the City's inexcusable conduct.

Respectfully submitted:

/s/ Marc A. Deldin
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043
(586) 741-8116
marc@deldinlaw.com
P71041

September 26, 2017                    *Attorney for the Nationwide Parties*