UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MICHIGAN

NATIONWIDE RECOVERY, INC.,               Case No. 4:17-cv-12378
                                         Hon. Linda V. Parker
          Plaintiff/Counter-Defendant,   Mag. Jdg. Stephanie Dawkins Davis

vs.

CITY OF DETROIT,

          Defendant/Counter-Plaintiff/Third-Party Plaintiff,

vs.

JERRY PARKER et al,

          Third-Party Defendants.
_____

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff, Nationwide Recovery brings this Motion for Partial Summary

Judgment pursuant to Fed. R. Civ. P. 56(a).  For the reasons outlined in the

accompanying brief, Nationwide requests this Court to grant partial summary

judgment in its favor and determine that Nationwide had a constitutionally

protected property interest in both Tow Permit # 16-047 and being on the Detroit

Police Department's list of authorized towing companies.

Pursuant to LR 7.1, counsel conducted a telephone conference on October 2,

2017. During the call, Plaintiff's counsel explained the factual and legal basis for

this motion. Counsel for the City of Detroit could not provide concurrence on any issue.

Respectfully submitted:

/s/ Marc A. Deldin
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043
(586) 741-8116
teri@deldinlaw.com
P71041


/s/ Teri L. Dennings
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043
(586) 741-8116
teri@deldinlaw.com
P68884
October 4, 2017               *Attorneys for Nationwide Recovery*

UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF MICHIGAN

NATIONWIDE RECOVERY, INC.,       Case No. 4:17-cv-12378
                                        Hon. Linda V. Parker
       Plaintiff/Counter-Defendant,       Mag. Jdg. Stephanie Dawkins Davis

vs.

CITY OF DETROIT,

       Defendant/Counter Plaintiff/Third-Party Plaintiff,

vs.

JERRY PARKER et al,

       Third-Party Defendants.

_____

BRIEF IN SUPPORT OF MOTION TO DISMISS

TABLE OF CONTENTS

STATEMENT OF THE ISSUES PRESENTED ................................................................. v

TABLE OF CONTROLLING AUTHORITY ................................................................. vi

I.      INTRODUCTION .................................................................................................. 1

II.     STATEMENT OF FACTS ...................................................................................... 2

    A.   The Detroit Board of Police Commissioners Sets the Standards and Rules for
       Authorized Towers, but the DPD Maintains the List of Qualifying Towers ..................... 2

    B.   DPD, not the BPC, Selects Nationwide as an Authorized Tower, Issues Nationwide a
       Towing Permit, and Places Nationwide on the List .......................................................... 4

    C.   The City Enacts an Administrative Fee Chargeable to Vehicle Owners ........................... 5

    D.   The City Wrongfully Removes Nationwide from the List and Revokes Its Permit ........... 5

    E.   The City Provides No Basis for Terminating Nationwide from the List ........................... 6

    F.   The City Manufactures Its Defense: Declares the Permits and the Entire Process Void ... 7

    G.   The Auditor General's 2011 Audit of the Police Authorized Towing Process and
       DPD's Response ................................................................................................................. 8

III.    ARGUMENT ........................................................................................................... 9

    A.   Standard of Review ............................................................................................................ 9

    B.   There is No Genuine Issue of Material Fact that Nationwide was Deprived of its
       Property Interests .............................................................................................................. 9

      1.   Nationwide Has Protected Property Interests in Being on the Towing List and in its
         Towing Permit .............................................................................................................. 9

      2.   Due Process was Required to Remove Nationwide from the Towing List ..................... 13

    C.   There Is No Genuine Issue of Material Fact that Nationwide's Towing Permit Is Not
       Void Ab Initio .................................................................................................................. 16

      1.   The BPC Was Not Involved in the Selection Process, Did Not Place Nationwide on the
         List, Did Not Issue the Permit, and the Board Chair's Signature on the Towing Permit
         Is Not Required and Has No Consequence ................................................................... 17

      2.   The Selection of Authorized Towers is Not a Financial or Budget Activity ................... 20

      3.   Towing Permits Are Not Contracts ................................................................................ 21

    D.   The City's Ab Initio Argument Does Not Abrogate Nationwide's Property Interest
       and Right to Due Process ................................................................................................. 22

    E.   The City Cannot Offer Evidence that Contradicts Its Official Record ........................... 24

IV.     CONCLUSION ...................................................................................................... 25

STATEMENT OF THE ISSUES PRESENTED

I.    DID NATIONWIDE HAVE A PROTECTED PROPERTY INTEREST
      PERMIT OF WHICH IT COULD NOT BE DEPRIVED BY THE CITY
      WITHOUT DUE PROCESS?

      a.  Did Nationwide Have a Property Interest in the 2016 Tow Permit?
      b.  Did Nationwide Have a Property Interest in Being on the List of
          Authorized Towing Companies?

Nationwide answers "Yes" to the above.

II.   WAS NATIONWIDE'S 2016 TOWING PERMIT AND ITS
      PLACEMENT ON THE TOWING LIST VOID *AB INITIO*?

      a.  Did the Board of Police Commissioners ("BPC") Qualify, Approve,
          Select, or Issue Nationwide's 2016 Towing Permit?
      b.  Did the BPC Qualify, Approve, Select, or Place Nationwide on the
          DPD's List?
      c.  Is the 2016 Towing Permit a "Contract"?

Nationwide answers "No" to the above.

# TABLE OF CONTROLLING AUTHORITY

## *Cases*

*Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971)

*Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972)

*Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 399, 729 N.W.2d 277 (2006)

*Detroit Edison Co. v. City of Wixom*, 382 Mich. 673, 172 N.W.2d 382 (1969)

*Gregg v. Lawson*, 732 F.Supp. 849 (E.D.Tenn.1989)

*Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999

*Hamilton v. Starcom Mediavest Group, Inc*., 522 F.3d 623, 627 (6th Cir.2008)

*Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)

*Titus v. Shelby Charter Twp.,* 226 Mich. App. 611, 574 N.W.2d 391 (1997)

## *Rules*

Fed. R. Civ. P. 56(c).

## *Ordinances*

Detroit City Code 52-2-82(a)

# I.   INTRODUCTION

Plaintiff, Nationwide Recovery is a towing company that, until recently, held Detroit Police Department ("DPD") Towing Permit # 16-047. (Exh. A, Affidavit of Jerry Parker) That Towing Permit did not expire until 2021; however, on July 20, 2017, the City terminated Nationwide's towing permit without providing due process. (Exh. A) Promptly after the City terminated its towing permit without a pre-deprivation hearing, Nationwide filed this action as a single count §1983 procedural due process claim.

On August 9, 2017, just 16 days after Nationwide filed this action, the City's Corporation Counsel issued a memorandum to DPD Chief James Craig that declared all Towing Permits,[1] including Nationwide's Towing Permit # 16-047 "null and void ab initio, and no tow company had or has any property right or interest in any purported permit." (Exh. B, Memorandum) The City's official record directly contradicts the factual assumptions that the memorandum relies upon.

---

[1] The City has not relented in its position that all Towing Permits are void. Since issuing the Memorandum, the City has also issued Solicitation 17CB1304 for Tow, Impound, and Storage Services for the Detroit Police Department. (Exh. C, Solicitation)

Nationwide had a property interest in Towing Permit # 16-047 and, independent of the Towing Permit, Nationwide had a property interest in being on the list of authorized towing companies (the "List"). The City's charter, ordinances and administrative rules created the List and the permitting scheme. The City cannot manufacture a defense around Nationwide's property right.

## II.   STATEMENT OF FACTS

A. The Detroit Board of Police Commissioners Sets the Standards and Rules for Authorized Towers, but the DPD Maintains the List of Qualifying Towers

Michigan law authorizes police and government agencies to provide for the immediate removal of a vehicle from public or private property to a place of safekeeping.[2] See, Special Anti-Theft Laws, MCL 257.252 et seq. In furtherance of DPD's towing authority, the City's ordinance charges its Board of Police Commissioners ("BPC") with establishing the standards that a prospective towing company must meet to qualify to police authorized tows. Detroit City Code § 55-2-82(a) provides:

> The Board of Police Commissioners shall establish standards, including insurance and bonding requirements, that must be met in order for a tower to qualify for police authorized tows, under this chapter, and the Police Department shall maintain **a current list** of such qualified towers. . . . In accordance with

---

[2] DPD tows generally include evidence vehicles, abandoned vehicles, stolen recoveries, forfeited vehicles, and illegally parked vehicles. (BPC Meeting 4/28/16, p. 30, attached as Exh. D).

Section 2-111 of the Charter, the Board of Police
Commissioners shall promulgate administrative rules for the
Body's determination as to which towers shall be called for
tows under this chapter. Such rules shall provide, as nearly as
practicable, for equitable distribution of police authorized
towing to all towers on the list of qualified towers. (emphasis
added)

On or about December 15, 2010, the BPC, Chief of Police and Mayor Bing

executed "Rules for Police Authorized Towers" which were published in the

Detroit Legal News on December 21, 2010.  (See Exh. E, Legal News; see also

executed copy of Towing Rules attached as Exh. F) The City enacted the rules

pursuant to the City Charter Section 2-111. (Exh. G) The City also prepared the

"Towing Application" and checklist used by Detroit Police Officer Kenyatta

Myers in determining eligibility for selection as an authorized tower (See Exh. H;

See also Exh. D - Board Minutes, 4/28/2016, p. 31-32, Statement of Officer

Myers).

Officer Myers is responsible for administering the police authorized towing

program. (Exh. D -Board Minutes, p. 27) Officer Myers vets the applicants in

consult with the City's Finance Department, which is responsible for collecting

administrative fees from the towers (Exh. D -Board Minutes, pp. 35-37) From

there he compiles a list of applicants meeting the towing standards. (Exh. D -Board

Minutes, p. 51) Those applicants become authorized towers. (Exh. D -Board

Minutes, p. 51) The list of authorized towers is forwarded to the BPC. (See

Commissioner Shelby asking Myers to forward Board the final list of authorized towers at Exh. D -Board Minutes, p. 51) Those on the authorized towers list receive a towing permit.[3]  In 2011, the towing permits were executed by the Deputy Police Chief (Exh. A-1), and in 2016, the towing permits were executed by the DPD Officer Kenyatta Myers and the Chair of the Police Commissioners (Exh. A-3). The list is renewed every five years. (Exh. F - Towing Rules, p. 11).

### B. DPD, not the BPC, Selects Nationwide as an Authorized Tower, Issues Nationwide a Towing Permit, and Places Nationwide on the List

In 2011, Nationwide received Tow Permit 11-042 and the DPD placed Nationwide on the authorized tower List. (Exh. A, Aff.) That tow permit expired on May 31, 2016. (Exh. A, Aff.)

In or around May 2016, the DPD vetted Nationwide's application, along with approximately 23 other towers, for selection as authorized towers. (Exh. D - Board Minutes, p. 21) Officer Myers oversaw the application and selection process, which included vetting the applications, communicating with City's Finance Department, and conducting inspections. (Exh. D -Board Minutes, pp. 32-36) At the conclusion of the vetting process, Nationwide was deemed qualified and

---

[3] "[T]he selection process formulated by the City **will** result in awarding tow permits …." (Towing Rules, Exh. F, p. 1)(emphasis added).

was selected as an authorized tower.[4] (Exh. D -Board Minutes, p. 51) The City

issued the 2016 Tow Permit on June 1, 2016, with an expiration date of May 31,

2021. (Exh. A-3). Officer Myers executed the 2016 Tow Permit. (Exh. A-3) Until

its termination, Nationwide was on the List. (Exh. B - Memorandum, p. 2)

### C. The City Enacts an Administrative Fee Chargeable to Vehicle Owners

The tow rate commission, headed by the Auditor General, convened in 2013,

which was the last time the administrative fee rates were changed. (Exh. D, p. 24).

The towing fees are set by the commission, from which a recommendation comes

with input from the BPC, to City Council (Exh. D, p. 24).  City Council adopts the

rate or fee and prepares a resolution. (*Id*.) In May 2013, the $215.00 tow rate was

adopted, with a $75.00 administrative fee going to the City, $125.00 to the towing

company, and $15.00/day for storage. (*Id.*) (Exh. O, Resolution). On or about May

28, 2013, the City's Finance Director sent a notice to the authorized towers,

informing them of the new rates.  (Exh. J).

### D. The City Wrongfully Removes Nationwide from the List and Revokes Its Permit

Until July 19, 2017, Nationwide was on the List and owned and possessed

DPD Tow Permit 16-047 ("2016 Tow Permit"). (Exh. A, Aff.) On July 19, 2017,

---

[4] Three towers were determined not to meet the qualifications and were not
selected as authorized towers. (Exh. H – 6/2/2016, Board Minutes).

without providing prior notice, the City removed Nationwide from the List and officers appeared at Nationwide's yard to take physical possession of Nationwide's 2016 Tow Permit. (Exh. A, Aff.) Later that day, the City issued an internal DPD administrative message (teletype #17-0519) that provides, among other things: "Pursuant to various local rules and ordinances pertaining to police-authorized towing, the Detroit Police Department has suspended Nationwide's Police Authorized Towing Permit. . . ." (Exh. K) On July 20, 2017, Nationwide, through its counsel, demanded the City provide "written notice detailing the reasons for [the] suspension." (Exh. A-4, Aff.) The City did not respond. (*Id.*)

E.  **The City Provides No Basis for Terminating Nationwide from the List**

The BPC towing rules recognize the tower's property interests in being on the List and owning a Towing Permit. The rules state following:

> The City reserves the right to terminate any towing permit with a tow company in the event of a breach of the towing permit or any provisions of the towing permit or of these Rules provided, however, that the permit holder shall be afforded ***an opportunity for a hearing*** before the Board of [sic] Commissioners or the Board's designee ***prior*** to the effective date of any such termination. (Exh. F - Towing Rules, p. 10).

Contrary to the express terms of the rules, however, Nationwide was not provided with the opportunity for a pre-deprivation hearing prior its suspension, termination, and revocation of its tow permit.  (Exh. A, Aff.) While legally

insufficient in this situation, the City didn't even afford Nationwide a post-deprivation hearing. (Exh. A, Aff.)

F.  The City Manufactures Its Defense: Declares the Permits and the Entire Process Void

On August 9, 2017, Corporation Counsel issued a memo to Police Chief James Craig purportedly dismantling the BPC towing rules. (Exh. B). At 9:33 AM that same day, the Deputy Corporation Counsel disclosed the memo to Nationwide. (Exh. L) In the memo, the City says the tow permits were void because: (1) the BPC Chair lacked authority to approve the selection of towing companies and/or to sign the permits, (2) selecting towing companies was a financial activity requiring oversight of the Chief Financial Officer, and, (3) the BPC is not authorized to qualify vendors or issue permits because the Charter requires contracts for services and written instruments to be approved by City Counsel and/or Corporation Counsel. (Exh. B)

The memo's factual contentions are false.  Even if the contentions are valid, they are insufficient justifications to divest Nationwide of its property interests and deprive it of due process.

G. The Auditor General's 2011 Audit of the Police Authorized Towing Process
and DPD's Response

On March 7, 2011, shortly after the BPC, Police Chief, and Mayor approved

the towing rules, the City's Auditor General released its Audit of the City of

Detroit Towing Process. (Exh. M, 2011 Audit) The DPD's response confirms that

the towing permits are quite different than a contract, and that it is the DPD that

issues the permits. In response to the Auditor General's findings that the DPD's

contract management is inadequate, then DPD Chief Ralph Godbee stated:

> The Detroit Police Department agrees that the current towing
> process management is inadequate. It should be noted that with
> the implementation of the new towing rules and regulations
> approved by the Board of Police Commissioners concerning the
> towing process, **only 'towing permits' will be issued to
> qualified applicants. No contracts** will be issued.

(Exh. N, DPD's Response to Audit) (emphasis added). The Auditor General found

that DPD issued prior towing "contracts" contrary to the City's Purchasing

Ordinance, to which Chief Godbee responded:

> The Department agrees to adhere to the Finance Department –
> Purchasing Division's requirements for proper policies and
> procedures for contractual agreements. It should be noted that
> under the new towing rules and regulations only 'towing
> permits' will be issued to qualified vendors.

(Exh. M)

8

### III.   ARGUMENT

#### A. Standard of Review

A motion for summary judgment is properly granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Hamilton v. Starcom Mediavest Group, Inc*., 522 F.3d 623, 627 (6th Cir.2008); *Harbin–Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir.2005). A party can request summary judgment as to an entire claim or defense or to parts of a claim or defense. Fed. R. Civ. P. 56(a).

#### There is No Genuine Issue of Material Fact that Nationwide was Deprived of its Property Interests

1. Nationwide Has Protected Property Interests in Being on the Towing List and in Its Towing Permit

Nationwide has a protected property interest in its 2016 Towing Permit and being on the towing List. In order to establish a procedural due process claim in a § 1983 action,

> plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment ..., (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and

9

      (3) that the state did not afford them adequate procedural rights prior
      to depriving them of their protected interest.

*Hahn v. Star Bank,* 190 F.3d 708, 716 (6th Cir.1999), *cert. denied,* 529 U.S. 1020,

120 S.Ct. 1423, 146 L.Ed.2d 314 (2000).  Nationwide's suspension and

termination from the list, along with revocation of its towing permit, constitutes

deprivation of its property interests.

      In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 2708, 33 L.Ed.2d

548 (1972), the Supreme Court recognized "[t]he Fourteenth Amendment's

procedural protection of property is a safeguard of the security of interest that a

person has already acquired in specific benefits. These interests—property

interests—may take many forms." For a property interest to exist, it must be more

than an abstract or speculative desire or need and it must be "more than a unilateral

expectation of it." *Id*., 92 S.Ct. at 2709. "[A] legitimate claim of entitlement" must

exist. *Id.* In *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570

(1972) the Supreme Court recognized, "A person's interest in a benefit is a

'property' interest for due process purposes if there are such rules or mutually

explicit understandings that support his claim of entitlement to the benefit and that

he may invoke at a hearing." *Id.*, 92 S.Ct. at 2699 (citation omitted). Such mutually

explicit understandings exist here. See also generally, *O'Hare Truck Serv., Inc. v.

City of Northlake*, 518 U.S. 712, 717, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996)

(placement on a municipal tow rotation list is a benefit).

In *Gregg v. Lawson*, 732 F.Supp. 849 (E.D.Tenn.1989), a wrecker[5] service owner was taken off the state rotational wrecker call list pursuant to order of Commissioner of State Department of Safety which prohibited owners with felony records from being on the list.  The plaintiff brought civil rights action against the Commissioner. The court held the plaintiff had a "legitimate claim of entitlement" in remaining on the wrecker tow list on grounds that "several references to and procedures for removal or suspension from the list to compel compliance with the regulations reflect the mutual nature of the relationship established by inclusion on the list." *Id.* at 853.  The court further reasoned the plaintiff had performed services for six years during which he had received economic benefits, complied with the written regulations, and had a valid expectation that he would be called on a regular rotating basis. Therefore, the plaintiff had a protected property interest in being on the wrecker list.

Similar to *Gregg*, the City's towing rules governed the application, selection and assignment process for DPD's authorized towers.  The rules' provisions are intended to compel towers to comply with the regulations and provide for termination from the list under subject to a due process hearing.  Nationwide has been on the towing list since 2011.  It has gained economic benefit from being on

---

[5] A wrecker is a tow truck. Meriam Webster (available at: https://www.merriam-webster.com/dictionary/wrecker )(last visited September 30, 2017).

11

the list; and, it has taken measures to comply with the rules to continue receiving

towing assignments until its permit expires.

In contrast, in *Durham v. Jones*, 698 F.2d 1179 (11th Cir.1983), a tow truck

operator brought action seeking declaratory and injunctive relief which would

require the county sheriff to place the tow operator's name on a list used for towing

automobiles.  The court held that the plaintiff lacked a property interest in being on

the sheriff's towing because the sheriff never placed plaintiff on the list and had

never used the plaintiff's services. *Id.*, at 1181. Further, the sheriff did not publicly

maintain the list; there were neither printed rules or regulations governing the list

nor a formal application procedure; and, there was no contractual relationship. *Id.*,

at 1180. In the course of coming to this conclusion, the Court of Appeals observed

that "[w]hile absence of a contractual right to employment does not preclude the

existence of a property interest, the plaintiff must show a mutually recognized

entitlement, as opposed to a unilateral expectation of a benefit, to establish the

existence of a property interest." *Id.* (citations omitted).

Nationwide's case is distinguishable from *Durham v. Jones* because printed

rules and mutually explicit understandings govern the parties' conduct.  The City

has written rules for the application and selection of towers. The City's ordinance

authorizes the BPC to enact the rules and the Chief of Police and then Mayor

approved the rules. Nationwide followed the formal application process and was

selected as a tower. Nationwide has been an authorized tower since 2011 without incident and has been utilized by the DPD continuously until its suspension from the list in July 2017

Nationwide had more than a mere unilateral expectation of a benefit and thus acquired a sufficient property interest in remaining on the list. *See Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Nationwide has sufficiently alleged "a legitimate claim of entitlement," *Board of Regents v. Roth*, 92 S.Ct. at 2709, based on the "rules or mutually explicit understandings," as outlined in the towing rules. *Perry v. Sindermann*, 92 S.Ct. at 2699.

2. <u>Due Process was Required to Remove Nationwide from the Towing List</u>

Having established that a sufficient property interest exists, the question becomes whether due process was required to remove Nationwide from the list? The Supreme Court has recognized that the concept of due process is flexible and "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972) (citations omitted). The legitimacy of the State's goals is not the issue; rather, the Court's obligation is "to determine whether the means used to achieve these ends are constitutionally defensible." *Id.*, 92 S.Ct. at 1213.

13

In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), an inflexible rule precluding examination of the circumstances surrounding deprivation of a license violated due process. The Supreme Court found that while a State might make blanket rules and regulations governing the issuance of drivers' licenses, once issued, the holder could acquire a sufficient property interest to require the safeguards of procedural due process prior to being subsequently deprived of the license. The process must be fundamentally fair, that is, it must be tailored to the protection of the legitimate property interest and provide the holder with sufficient opportunity to vindicate or protect those interests. Neither the nature of the State's interest nor the expense of providing adequate due process can override the person's right to due process. *Id.*, 91 S.Ct. at 1589–1590.

In *Bell*, the failure of the State to provide some procedure by which to weigh and accommodate a person's property interest in a driver's license violated due process because the followed procedure excluded "consideration of an element essential to the decision whether licenses of the nature here involved shall be suspended," *id.*, 91 S.Ct. at 1591, and thus did not provide a meaningful opportunity to vindicate the person's property interest. The Court held a pretermination hearing was required. *Id.* "[W]hether any procedural protections [were] due depends on the extent to which an individual will be 'condemned to

14

suffer grievous loss.'" *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972) (citation omitted).

Similar to *Bell*, Nationwide's placement on the list facilitated its receipt of a towing permit.  It began performing towing services under the policies and regulations in 2011 and did so without issue until it was terminated from the list in July 2017, without due process. The City has provided no meaningful opportunity for Nationwide to vindicate its property interest, to establish that revocation of the permit was unfair, arbitrary, and/or without sufficient cause.  As a result of the deprivation, Nationwide has suffered a grievous loss of towing business and damage to its reputation.

According to Defendant's towing policy, Nationwide was entitled to due process. The towing rules provide the following:

> The City reserves the right to terminate any towing permit with a tow company in the event of a breach of the towing permit or any provisions of the towing permit or of these Rules provided, however, **that the permit holder shall be afforded an opportunity for a hearing** before the Board of [sic] Commissioners or the Board's designee prior to the effective date of any such termination. [emphasis added] (Exh. F, p. 10).

Therefore, the towing rules, promulgated by the City, concede that its discretion to suspend or terminate Nationwide's benefit was constrained by standards of just case, the justification of which was to be established by a hearing. The City should be estopped from now asserting due process is inapplicable. The

City's policies and rules created a mutual understanding with Nationwide that it would continue conferring a benefit until the towing permit expired or Nationwide's benefit was revoked subject to due process.

### B. There Is No Genuine Issue of Material Fact that Nationwide's Towing Permit Is Not Void Ab Initio

The City's August 9, 2017 memo ("Memorandum") to Detroit Police Chief James Craig relies on facts that the City's official record does not support. Even if the Memorandum's "facts" constitute reality, the Memorandum alleges nothing more than technical or management deficiencies, none of which outweigh Nationwide's due process rights or make its placement on the list and towing permit, void *ab initio*.  In the memo, the City's Corporation Counsel suggests the permits are void *ab initio* for the following reasons:

1. The BPC Chair lacked authority to sign the towing permits;
2. The Board did not file a resolution selecting towing companies;
3. Selecting towing companies is a financial and/or budget activity requiring oversight of the Chief Financial Officer; and,
4. The permits are subject to the contract vendor approval process.

All of the above excuses are insufficient to deprive Nationwide of its property rights.  First, the BPC's towing rules do not require that the BPC's Chair or any person actually execute the permit. DPD Officer Myers vets and selects the towers and places them on the List. (Exh. D, pp. 35-37). Thus, signing the permit

was a ceremonial act of no consequence, legal or otherwise. Second, the Board wasn't required to file a resolution to effectuate selection of the authorized towers. Third, the selection of towers is not a financial or budget activity; and, to the extent such limited activity exists with respect to collecting administrative fees, that function is performed by the City's Finance Department. Finally, the towing permits are not contracts subjecting them to City Council/Corporation Counsel approval. Thus, the City's allegations of deficiencies in its towing selection process does not make Nationwide's property interest void.

1. <u>The BPC Was Not Involved in the Selection Process, Did Not Place Nationwide on the List, Did Not Issue the Permit, and the Board Chair's Signature on the Towing Permit Is Not Required and Has No Consequence</u>

The Board of Police Commissioners is composed of eleven (11) members, seven of whom are elected from each non-at-large district. Four (4) members of the Board are appointed by the Mayor, subject to the approval of the City Council. City Charter Sec. 7-802, Board of Police Commissioners.

Sec. 7-803(1), states, the Board shall, in consultation with the Chief of Police, and with the approval of the Mayor establish policies, rules and regulations. The City Code 52-2-82(a) mandates that the BPC establish standards and rules for police authorized towing. In 2010, the towing rules and regulations were established and approved by then-Mayor Bing, Chief of Police Ralph Godbee, Jr., and the Board of Police Commissioners. (Exh. F).

17

The selection process consists of an application and vetting process, performed by DPD Officer Meyer. (Exh. D). The towing rules state, "[T]he selection process formulated by the City will result in awarding tow permits ...." (Exh. F, p. 1). Thus, once DPD has vetted the towers and authorized their placement on the List, the execution of the permit is nothing more than a ceremonial act without consequence. This is evidenced by the fact that the permits were signed by the Chief Deputy in 2010, and Officer Myers and the Board Chair in 2016. Given that the BPC has supervisory control and oversight of DPD with respect to monitoring authorized towers, the Board Chair had the authority to execute the permits, either officially or as part of a ceremonial act.

There is no legal requirement that the BPC pass a resolution to effectuate selection of authorized towers. The BPC's towing rules do not require the BPC to approve placement on the List or the issuance of a Tow Permit. A resolution is the form in which a legislative body expresses a determination or directs a particular action. It is of special or temporary character, whereas an ordinance prescribes a permanent rule for the conduct of government. *Kalamazoo Municipal Utilities Ass'n v. Kalamazoo*, 345 Mich. 318, 328, 76 N.W.2d 1 (1956). When Nationwide and other towers received their initial towing permits in 2011, those permits were signed by the Deputy Chief of Police. Nationwide performed continuously under

that permit until its expiration on May 31, 2016. At which time, the DPD issued
Nationwide its 2016 Towing Permit, which Officer Kenyatta Myers signed.

On April 28, 2016, Deputy Chief for Legal Affairs, Celia Washington and
Officer Myers gave an extensive presentation on the towing process to the BPC.
There they discussed the application, vetting, and selection processes and agreed to
forward the BPC a final list of authorized towers, as well as applicants who were
rejected. (Exh. D) Subsequently, during the June 2, 2016 meeting, towers who
were delinquent in paying administrative fees appeared before the Board asking to
be placed back on the list. (Exh. H, 6/2/2016, BPC Meeting). The BPC, generally,
rejected their requests on recommendation of DPD legal counsel Ms. Washington.
At no time during either the 4/28/16 or 6/2/16 meetings, where towing operations
were discussed extensively, did the Board, Ms. Washington, Mr. Myers, who
himself executed the 2016 Tow Permit, or anyone appearing on behalf of the
Mayor or Police Chief, claim that the permits had not been properly executed or
that a resolution was required to effectuate the towing List. (Exhs. D, H). Thus, the
intent of the DPD and BPC is evident, to the extent a resolution was required, the
lack thereof is merely a technicality as opposed to substantive defect, which the
City could cure without infringing upon Nationwide's constitutional rights.

2. <u>The Selection of Authorized Towers is Not a Financial or Budget Activity</u>

Assuming, for the sake of argument, that the Memorandum's factual contentions are true, the selection of towing companies does not constitute a "financial or budget activity" under MCL 117.4s. (Exh. G-4) The limited financial aspect of the police towing program is the receipt of the administrative fee.  The administrative fee rate is set by the tow committee (and approved by City Council), paid by those recovering their cars, and forwarded from the authorized tower to the City. (Exh. D).  The administrative fees are received by the City's Finance Department. (Exh. D, p. 35). The Police Department does not deal with or collect the fees.  (*Id.*). Thus, to the extent collection of the administrative fees is considered a "financial activity," the collection is overseen and monitored by the City's Finance Department, within treasury. (See also Exh. N).

If the Court further assumes that towing is a "financial or budget activity," the City Charter contains an exception that the City has specifically exercised when it enacted the Ordinance that requires the BPC to enact rules and the DPD to maintain a List of qualified towing companies. Charter Sec. 6-306, which the Memorandum relies upon, provides that "The Purchasing Director shall . . . Procure all property and all services of independent contractors to be paid for from appropriations made in the annual budget . . . **except that** an agency may be authorized **by ordinance** to procure specified kinds of property and **services**

**directly**." (emphasis added). Detroit City Code § 55-2-82(a) authorizes the DPD to procure towing services through maintaining the List. (Exhs. G-2, G-3).

3.  Towing Permits Are Not Contracts

Significantly, the towing permits are not contracts; and, the City's belated attempt in its Memorandum characterizing them as contracts that are subject to approval of City Council and/or Corporation Counsel is inconsistent with official positions the City took in April 2016.  At that time, Deputy Chief for Legal Affairs Celia Washington specifically stated the towing permits are not contracts.  During the April 28, 2016, BPC meeting, when the towing program and renewals were extensively discussed, Ms. Washington stated:

> The towers are coming up on the end of a five year permit and **I do say permit; it is not a contract; it is a permit and we specifically named it a permit for some legal reasons**. But it is a permit and they are coming up on the renewal period the end of May. (See Exh. D, p. 22)(emphasis added).

These statements are official statements of the City. *Titus v. Shelby Charter Twp.,* 226 Mich. App. 611, 574 N.W.2d 391 (1997)

Further, Deputy Chief Washington's statement that the permits are not contracts constitutes a party admission. Fed. R. Evid. 801(d)(2)(D).  She made the statement as DPD's attorney/agent concerning a matter within the scope of her agency/employment. When she made the statement acknowledging the permits were not contracts, she was in-house counsel for DPD.  She offered the statement

while presenting to the BPC on towing operations in the capacity of legal counsel and on behalf of the Police Chief.

The City should be equitably estopped from taking a position contrary to the position it took publicly, just last year. Estoppel arises where a party, by representations, admissions or silence, intentionally or negligently induces another party to believe facts, and the other party justifiably relies and acts on this relief, and will be prejudiced if the first party is permitted to deny the existence of the facts." *Casey v. Auto Owners Ins. Co.*, 273 Mich. App. 388, 399, 729 N.W.2d 277 (2006) (internal quotation and citation omitted). Deputy Chief Washington stated the permits were intentionally categorized as "permits" to avoid being construed as contracts. (Exh. D, p. 22). Therefore, the City should be estopped from now asserting the permits are contracts subject to resolution and/or City Council/Corporate Counsel approval. Nationwide's property rights should not be abdicated when the City took purposeful steps in asserting to the BPC and the public the permits are not contracts.

## C. The City's *Ab Initio* Argument Does Not Abrogate Nationwide's Property Interest and Right to Due Process

As of August 9, 2017, the City decided to use procurement to obtain towing services. (Exh. B).  As of July 20, 2017, however, the City had already removed Nationwide from the towing list and revoked its permit.  Nationwide acquired a

vested property interest prior to the City's decision to utilize procurement for towing services.

In *Detroit Edison Co. v. City of Wixom*, 382 Mich. 673, 172 N.W.2d 382 (1969), Edison, pursuant to permit secured from the Michigan Public Service Commission, made plans to run a high voltage line through the City of Wixom. Under the permit to construct, the towers supporting the lines had to be at least 130 feet high. Edison had acquired the right of way, some 4 miles long and 200 feet wide, at a cost of $273,000, but had not commenced construction. Before construction could commence, the Wixom city council amended the city's zoning ordinance to prohibit towers more than 100 feet high. The Supreme Court found that Edison had acquired vested rights prior to the enactment of the ordinance. "Viewed in this chronological context, we must and do hold the ordinance to be invalid as applied to plaintiff in that said ordinance operates retroactively upon plaintiff's vested property rights and not in futuro as required by our previous decisions. *City of Lansing v Dawley*. 247 Mich. 394, 225 NW 500 (1929)." 382 Mich. 690, 172 N.W.2d 382.

Similarly here, Nationwide had a vested property interest in remaining on the towing List until 2021 when the permit expired. Nationwide performed under the permit and been on the List for several years and had a legitimate expectation for continued towing assignments. To the extent the City sought to deprive

Nationwide of its property interest, Nationwide was entitled to a due process

hearing. The City has provided no legal authority to divest Nationwide of its

property.

### D. The City Cannot Offer Evidence that Contradicts Its Official Record

This motion relies almost exclusively on the City's official record: the

BPC's meeting minutes. The City Charter establishes the BPC as an 11-member

body with "supervisory control and oversight" of the DPD. Det. City Charter, Sec.

7-802. As a multi-member body, the Charter requires the BPC to keep a "record of

its proceedings." Charter, Sec. 2-110.

The Michigan Supreme Court has "repeatedly held that where records are

required to be kept . . . their import cannot be altered or supplemented by parol

testimony." *Tavener v. Elk Rapids Rural Agr. Sch. Dist.*, 341 Mich. 244, 251, 67

N.W.2d 136, 139 (1954).

> When the law requires municipal bodies to keep records of their
> official action in the legislative business conducted at their
> meetings, the whole policy of the law would be defeated if they
> could rest partly in writing and partly in parol, and the true
> official history of their acts would perish with the living
> witnesses, or fluctuate with their conflicting memories. No
> authority was founds [sic], and we think none ought to be,
> which would permit official records to be received as either
> partial or uncertain memorials. That which is not established by
> the written records, fairly construed, cannot be shown to vary
> them. They are intended to serve as perpetual evidence, and no
> unwritten proofs can have this permanence.

*Id.* 251–52, 139, quoting *Stevenson v. Bay City*, 26 Mich. 44, 45 (1872).

The BPC's official record contradicts the factual assumptions contained in the Memorandum. The Tow Permits are not "contracts," (Exh. D, p. 22; see also, Exh. N - DPD Audit Response) and the BPC had nothing to do with the selection of towing companies, their placement on the List, and the issuance of their Tow Permits. (Exh. D, pp. 35-37, 51).

## IV.   CONCLUSION

There is no genuine issue of material fact that Nationwide had a property interest in being on the towing List and in the 2016 Towing Permit.  The City's purported interests are insufficient to divest Nationwide of its property interests. For the reasons stated in its Motion and Brief in Support, Nationwide's Motion for Partial Summary Judgment should be GRANTED.

Respectfully submitted:

/s/ Marc A. Deldin
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043
(586) 741-8116
teri@deldinlaw.com
P71041


/s/ Teri L. Dennings
Deldin Law
48 S. Main, Suite 3
Mount Clemens, MI 48043

(586) 741-8116
teri@deldinlaw.com
P68884

October 4, 2017                    *Attorneys for Nationwide Recovery*

## CERTIFICATE OF SERVICE

On October 4, 2017, the undersign certifies that he caused a copy of the foregoing document to be submitted to the Court using the ECF System, which will send notice of this filing to all attorneys who have appeared.

/s/ Marc A. Deldin

October 4, 2017