UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE RECOVERY, INC.
JERRY PARKER, HUSSEIN M. HUSSEIN,
LOUAY M. HUSSEIN, ANNIE HUSSEIN,
JULIA HUSSEIN, CAROL HENDON,

          Plaintiffs,

v.

CITY OF DETROIT,

          Defendant.

_____/

Case No. 17-cv-12378
Honorable Linda V. Parker

## OPINION AND ORDER (1) GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 24), (2) DENYING DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 41), AND (3) DENYING, AS MOOT, PLAINTIFFS' MOTION TO STRIKE ARGUMENT V OF DEFENDANT'S MOTION TO DISMISS (ECF NO. 87)

Plaintiff Nationwide Recovery, Inc. ("Nationwide Recovery") initiated a single count § 1983 complaint on July 24, 2017. (ECF No. 1.) This lawsuit arises from the suspension of Nationwide Recovery's towing permit and removal from the police authorized towing list without a pre-deprivation hearing. (*Id.*) Presently before the Court is Nationwide Recovery's Motion for Partial Summary Judgment, filed October 4, 2017. (ECF No. 24.) Defendant the City of Detroit filed a response and cross-motion for summary judgment on October 25, 2017. (ECF No. 41.) Finding the legal arguments in the brief sufficient, the Court is dispensing

with oral arguments pursuant to L.R. 7.1(f)(2).  For the reasons stated below, the Court grants Plaintiffs' motion for partial summary judgment, denies Defendants' cross-motion for partial summary judgment, and denies, as moot, Plaintiffs' motion to strike Argument V of Defendant's motion to dismiss.

## I.    Factual and Procedural Background

Nationwide Recovery is a towing service and operates a motor vehicle storage yard in Detroit, MI.  (ECF No. 13.)  Beginning in 2010, the City began issuing towing permits to qualified towing companies to conduct police authorized tows.  (ECF No. 13 at Pg ID 152.)  The Detroit City Code § 55-2-82(a) provides:

> The Board of Police Commissioners shall establish standards, including insurance and bonding requirements, that must be met in order for a tower to qualify for police authorized tows, under this chapter, and the Police Department shall maintain a current list of such qualified towers. . . . In accordance with Section 2-111 of the Charter, the Board of Police Commissioners shall promulgate administrative rules for the Body's determination as to which towers shall be called for tows under this chapter. Such rules shall provide, as nearly as practicable, for equitable distribution of police authorized towing to all towers on the list of qualified towers.

According to Nationwide Recovery, the Board of Police Commissioners ("BPC"), Chief of Police, and then-mayor published "Police Towing Rules" in the *Detroit Legal News* on December 21, 2010.  (ECF No. 24 at Pg ID 453.)  The City prepared the towing application and checklist.  (*Id.*)  Detroit Police Officer Kenyatta Myers, who was responsible for administering the police authorized

tows, used the checklist to determine eligibility for the towers.  (*Id.*)  After vetting

the applicants, Officer Meyers consulted with the City's Finance Department, who,

then, collected any administrative fees from the approved towers.  (*Id.*)  Thereafter,

Officer Meyers compiled a complete list of eligible police authorized towers and

forwarded the list to the BPC.  (*Id.*)  Those on the authorized towing list received a

towing permit that was valid for a period of five years.  (*Id.* at Pg ID 454.)  The

permit was renewable every five years.  (*Id.*)  In 2011, the Deputy Police Chief

executed the permits, and in 2016, Officer Meyers and the Chair of the BPC

executed the permits.  (*Id.*)  The tow rate commission set the tow rate, which the

City adopted and issued a resolution to the same.  (*Id.* at Pg ID 455.)  The tow rate

included an administrative fee that went directly to the City's Finance Department,

a towing fee, and a daily storage fee.  (ECF No. 24 at Pg ID 455; ECF No. 24-16 at

Pg ID 670.)  The City's Finance Director issued the most recent rate on May 28,

2013.  (ECF No. 24 at Pg ID 455; ECF No. 24-11 at Pg ID 603.)

In 2011, Nationwide Recovery became a holder of Detroit Police

Department ("DPD") Tow Permit #11-042, which was effective until May 2016.

In May 2016, Nationwide Recovery renewed its permit and became the holder of

Detroit Police Department Tow Permit #16-047, which had an expiration date of

May 31, 2021.  (ECF No. 13 at Pg ID 153-54; ECF No. 24 at Pg ID 254.)  On July

19, 2017, without notice or hearing, officers from the Detroit Police Department

took possession of Nationwide Recovery's towing permit and, subsequently, removed its name from the towing list. (ECF No. 13 at Pg ID 155.) Although Nationwide Recovery, through its counsel, asked the City to provide a written notice detailing the suspension, the City never responded. (ECF No. 24 at Pg ID 456; ECF No. 24-2 at Pg ID 501.) According to Nationwide Recovery, BPC's towing rules recognize a property interest in holding a permit and being on the towing list, and, therefore, Nationwide Recovery was entitled to a pre-deprivation hearing prior to its towing suspension, termination, and revocation. (ECF No. 24 at Pg ID 456.) The towing rules provide as follows:

> The City reserves the right to terminate any towing permit with a tow company in the event of a breach of the towing permit or any provision of the towing permit or of these Rules provided, however, that the permit holder shall be afforded an opportunity for a hearing before the Board of Commissioners or the Board's designee prior to the effective date of any such termination.

> The City may immediately terminate any towing permit with a tow company for fraud or criminal conduct by the tow company or its employees, provided however, that as soon as practicable the permit holder shall be afforded an opportunity for a hearing before the Board of Commissioners or the Board's designee following which hearing the Board shall either affirm or rescind the termination.

(ECF No. 41-9 at Pg ID 1552.) On July 24, 2017, Nationwide Recovery initiated this lawsuit. (ECF No. 1.)

On August 9, 2017, the City's Corporation Counsel issued a memorandum to the Chief of Police that declared all towing permits, including that of Nationwide Recovery, "null and void ab initio, and no tow company had or has any property right or interest in any purported permit." (ECF No. 24 at Pg ID 451; ECF No. 24-3.) The memorandum further stated that the BPC did not have authority to select, approve, or issue any company towing permits. (ECF No. 24-3 at Pg ID 503.)

On August 14, 2017, the City filed a Counterclaim, as well as a Third-Party Complaint against Jerry Parker, Hussein M. Hussein, and Louay M. Hussein, all of whom are Nationwide Recovery officers and/or owners. (ECF No. 5.) In the City's Counterclaim and Third-Party Complaint, the City alleged, among other things, that Nationwide Recovery conspired to commit fraud and auto theft.

On September 5, 2017, Nationwide Recovery filed an Amended Complaint, adding a First Amendment retaliation claim. (ECF No. 13.) After twice amending its Counterclaim and Third-Party Complaint, on October 16, 2017, the City voluntarily withdrew its Counterclaim and Third-Party Complaint. (ECF Nos. 14, 18, & 27.)

On December 6, 2017, this Court granted Nationwide Recovery's request to amend its Complaint a second time to add additional parties and claims. (ECF Nos. 32 & 57.) On December 29, 2017, Nationwide Recovery filed its Second

Amended Complaint, adding (1) Jerry Parker, (2) Hussein M. Hussein, (3) Louay M. Hussein, (4) Annie Hussein, (5) Julia Hussein, and (6) Carol Hendon as Plaintiffs; (1) Charles N. Raimi, (2) Ronald G. Acho, and (3) Cummings, McClorey, Davis, & Acho, P.C. as Defendants; and claims for intentional infliction of emotional distress, tortious interference with business expectancy and relationship, conspiracy to violate constitutional rights, and loss of consortium. (ECF No. 61.)  Subsequently, on March 19, 2018 and April 10, 2018, Plaintiffs voluntarily dismissed all Defendants, except the City, as well as dismissed their claims for intentional infliction of emotional distress and tortious interference with business expectancy and relationship.  (ECF Nos. 95 & 105.)  On February 16, 2018, the City filed a motion to dismiss.  (ECF No. 81.)  The motion has been fully briefed and is pending before the Court.

## II.    Standard of Review

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.  R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  After adequate time for discovery and upon motion, Rule 56

mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

## III.    Applicable Law & Analysis

Although Plaintiffs filed a Second Amended Complaint since the filing of its motion for partial summary judgment, the parties and claims that were added have no bearing on the instant motions.  Therefore, the Court will address the pending motions for partial summary judgment.

### A. The Permit Is Not a Contract

The City argues the permit was a contract and claims Nationwide Recovery cannot prove its permit was lawfully issued.  The City relies on a number of contract cases to support its claims.  However, the City has failed to show that the permit was a contract.  The City argues the permit was a contract because the parties were governed by "printed rules and mutually explicit understandings." (ECF No. 14 at Pg ID 1398.)  While it is true that a property interest must derive from "rules or understandings," the City's overly broad argument would characterize all claims for a property interest as a contract.  A principle of due process is that a property interest must derive from an independent state source such as "rules or understandings" that secure certain benefits and support claims of entitlement.  *See Bd. of Regents State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Moreover, the City has not offered any evidence of consideration, and the

Michigan Court of Appeals[1] has stated, "[p]ayment of a simple license[2] or permit[3] fee is not such consideration that will support the existence of a contractual relationship." *Midwest Teen Ctrs, Inc. v. Roseville*, 36 Mich. App. 627, 630 (Mich. Ct. App. 1971). As such, the Court is not persuaded that Nationwide Recovery's permit was a contract.

---

[1] "The highest court of each State, of course, remains 'the final arbiter of what is state law.'" *Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) (citing *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236, 237 (1940) ("[I]t is the duty of [federal courts] in every case to ascertain from all the available data what the state law is and apply it rather than to prescribe a different rule, however superior it may appear from the viewpoint of 'general law.'"). However, if the highest court has not decided an issue, as is the case here, federal courts are required to follow the decisions of the lower state courts. *Wieczorek v. Volkswagenwerk, A.G.*, 731 F.2d 309, 310 (6th Cir. 1984) ("In order to determine the Michigan law, we thus turn to the decisions of the Michigan intermediate courts, which are binding authority in federal courts in the absence of any Michigan Supreme Court precedent.").

[2] "Michigan courts have previously defined a 'license' as 'a grant of permission to do something,' *Bray v. Dep't of State*, 69 Mich. App. 172, 177; 244 N.W.2d 619 (1976), as 'the permission by competent authority to do an act [that], without such permission, would be illegal,' *People v. Henderson*, 391 Mich. 612, 616; 218 N.W.2d 2 (1974), or as 'a mere privilege to carry on a business subject to the will of the grantor,' *Midwest Teen Ctrs, Inc. v. City of Roseville*, 36 Mich. App. 627, 632; 193 N.W.2d 906 (1971). Thus, the word 'license' clearly denotes the concept of a grant of present authority to do something." *Morris & Doherty, P.C. v. Lockwood*, 259 Mich. App. 38, 47 (Mich. Ct. App. Oct. 7, 2003).

[3] The Michigan courts generally consult to dictionary definitions when confronted with an undefined term. *See Koontz v. Ameritech Servs., Inc.*, 466 Mich. 304, 312 (2002). Therefore, "permit" is defined as "[p]ermission granted by a government to do something that is regulated. A permit is a license by a government to engage in some conduct or activity that is allowed only according to the conditions of such a permit." *Bouvier Law Dictionary* (2012).

## B.  The Permit Is Not Contrary to the City Charter or City Code

The City relies on § 4-122 of the City Charter, which provides that "[t]he City may not purchase or in any way procure property or the services of independent contractors without approval by resolution of the City Council except as provided by ordinance."  However, § 4-122 has a clearly defined exception that authorizes the City to procure services, if provided by ordinance.  To that point, § 55-2-82 of the Detroit City Code authorizes the BPC to establish towing standards, as well as promulgate rules for the towers.  It states, in part, "The Board of Police Commissioners shall establish standards, including insurance and bonding requirements, that must be met in order for a tower to qualify for police authorized tows, under this chapter, and the Police Department shall maintain a current list of such qualified towers."  It goes on to state, "[i]n accordance with Section 2-111[4] of the Charter, the Board of Police Commissioners shall promulgate administrative rules for the Body's determination as to which towers shall be called for tows under this chapter."  As such, and as authorized in § 7-803[5], the BPC, Chief of Police, and then mayor established towing rules and standards consistent with the

---

[4] "Where a city ordinance permits or requires a city department director, agency, head or multi-member body to promulgate a rule governing dealings between the City and the public, or establishing hearing procedures for resolving matters in dispute, the city department director, agency head or multi-member body shall comply with this section."

[5] "The Board shall . . . [i]n consultation with the Chief of Police, and with the approval of the Mayor establish policies, rules and regulations . . . ."

expressed authority of 55-2-82. Although Plaintiffs maintain BPC did not select, approve, or execute the permits, the City has provided no authority that would preclude the BPC from doing so.

Further, the City argues that because the Commissioner of the BPC executed the permit, it essentially issued permits without authority. Again, there is nothing in the City Charter or City Code that prohibits the Commissioner of the BPC from executing the permits or, even, requiring the permits be executed. As mentioned, it is the BPC who establishes the towing rules and standards, and as such, executing the permit would not have been improper. Finally, because the BPC oversees DPD, it is not surprising that the Commissioner of the BPC would execute the permits following DPD's approval of a tower.

Therefore, the Court finds that the permit is not contrary to the City Charter or City Code.

### C. The Permit Is Not Contrary to State Law

The City also relies on Mich. Comp. Laws §117.4s, which mandates that the City's Chief Financial Officer shall supervise all "financial and budget activities" of the City. The City asserts that towing is a financial activity that should have been under supervision of the City's Chief Financial Officer. The City advances the following arguments as to why towing is a financial activity and not properly supervised under the BPC: (1) towing implicates millions of dollars; (2)

Nationwide Recovery was not eligible to receive a towing permit; (3) improper procurement procedures lead to expensive and disruptive litigation; and (4) procurement requires broad advertising to get the most qualified bidders. The Court is not persuaded by the City's arguments.

The City's arguments as to the alleged improper procurement procedures and lack of broad advertising are irrelevant to the question of whether towing is a financial activity. Such broad reasoning is inconsistent with § 4-122 of the City Charter, which allows for procurement exceptions. Further, the fact that towing generates millions of dollars does not automatically cause towing to fall within the purview of the statute. Mich. Comp. Laws § 117.4s became effective June 20, 2014. However, the City maintains that all permits issued in 2016 were *void ab initio*. If towing was a financial activity as the City claims, all permits issued after the effective date would have been *void ab initio*, including those issued in 2011. If the City intended towing to be a financial activity or outside the authority of the BPC, then the City Council would have made that clear. As it stands, nothing in state law prevents the issuance of the permits.

Likewise, Mich. Comp. Laws § 141.1636 is inapplicable because it concerns "applicable contracts," and, as set forth above, this Court has found the permit was not a contract. As to the City's eligibility argument, assuming Nationwide did not

qualify for a permit because of its failure to pay City income taxes, then that issue should have been addressed in a hearing in accordance with the towing rules.

Therefore, the City's position is inconsistent with the City's regulatory scheme. None of the statutes or charter provisions the City relies upon invalidate Nationwide's permit.

### D. Procedural Due Process

Now, the court turns to Plaintiffs' procedural due process argument. In Plaintiffs' motion for summary judgment, Plaintiffs argue that they had a property interest in Towing Permit #16-047, and independent of the permit, they had a property interest in being on the list of authorized towing companies. (ECF No. 24 at Pg ID 452.) As such, Plaintiffs contend that the City wrongfully terminated Nationwide Recovery's permit and removed it from the towing list. The City, however, maintains that Nationwide Recovery's permit was a contract, which was unlawfully issued and contrary to public policy, state law, and the City Charter.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents*, 408 U.S. at 569. This "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Id*. at 576.

> To establish a procedural due process claim pursuant to §
> 1983, plaintiffs must establish three elements: (1) that

they have a life, liberty, or property interest protected by the *Due Process Clause of the Fourteenth Amendment to the United States Constitution*, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest.

*Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999), *cert denied* 2000 U.S. Dist. LEXIS 1941 (Mar. 20, 2000).

### 1. Property Interest

Plaintiffs argue that the City's towing rules governed the application, selection and assignment for DPD's authorized towers. According to Nationwide Recovery, it has been on the list for authorized towers since 2011 and have gained an economic benefit. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents*, 408 U.S. at 577; *Chilingirian v. Boris*, 882 F.2d 200, 203 (6th Cir. 1989). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents*, 408 U.S. at 577; *see also Mich. Paytel Joint Venture*, 287 F.3d 527, 539 (6th Cir. 2002), *superseded on other grounds by amendment to the federal rules of procedure*, Fed.

14

R. Civ. P. 56(c)(2). "[A] benefit is not a protected entitlement if the governmental office may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). "To establish a protected property interest . . ., [plaintiff] must invoke some statutory or contractual right conferred by the State of Michigan that supports a legitimate claim to" having its name on the towers list and possessing a towing permit. *Mich. Paytel Joint Venture*, 287 F.3d at 539. To make that determination, despite "its state-law underpinnings," the Court must look to federal constitutional law to determine whether the "interest rises to the level of a 'legitimate claim of entitlement' protected by the due process clause." *Id.* at 757.

In *Bundo v. Walled Lake*, 395 Mich. 679 (1975), plaintiff was issued an entertainment permit with the condition that no topless dancing would occur on the premises. *Bundo*, 395 Mich. at 684. From 1968-71, Plaintiff's permit was renewed without incident. In 1971, plaintiff began allowing topless dancing. On February 14, 1972, without prior notice or hearing, plaintiff's license was revoked. Subsequently, plaintiff initiated a civil action for violation of procedural due process. The Michigan Liquor Control Act, Mich. Comp. Laws § 436.17, permitted the revocation of a license without notice or hearing for applications of renewal for existing licenses. *Id.* at 686. Despite this, the Michigan Supreme Court found that plaintiff had a property interest in the license. The court focused

15

on the differences in obtaining an initial license as compared to renewal. Approval was needed for an applicant who applied for an initial license, but the holder of an existing license did not need approval. A licensee understood renewal to occur as a matter of course. *See id.* at 694-95. Applying *Bundo* to this context, as an applicant, Nationwide Recovery had no more than a unilateral expectation. Once Nationwide Recovery was approved as a police authorized tower, it was placed on the towing list and received a permit that was good for five years. At this point, unlike at the initial application stage, the governmental body lacked the authority to grant or deny a permit in its discretion.

In *Midwest Teen Centers v. Roseville*, 36 Mich. App. 627 (Mich. Ct. App. Oct. 7, 1971), plaintiff brought a civil suit for wrongful revocation of its dancehall permit. *Midwest Teen Ctrs.*, 36 Mich. App. at 628. The permit included revocation procedures, which included a notice and hearing. On October 9, 1968, plaintiff's permit was revoked without notice and hearing. *Id.* at 629. Although the Michigan Court of Appeals disagreed with plaintiff 's claim that the permit was a contract and it had a *vested property right* in the permit, the court found, nonetheless, that plaintiff was still entitled to due process. *Id.* at 629-30; *see also Mich. Envtl. Res. Assoc., Inc. v. Cnty. of Macomb*, 669 F. Supp. 158, (E.D. Mich. Sept. 18, 1987) ("MERA points to *Midwest Teen Centers, Inc. v. City of Roseville*, 36 Mich. App. 627, 193 N.W.2d 906 (1971) and *Eastwood Park Amusement Co. v.*

*Mayor of East Detroit*, 325 Mich. 60, 38 N.W.2d 77 (1949). In both cases,

Michigan courts held that once a license was granted, a constitutionally protected

property interest was created, and could not be revoked without due process of law.

Such a rule comports with the holding of *Roth*: persons who possess a license

generally come to rely on it in their daily lives. Reliance transforms it into

constitutionally protected property.").

The Court notes that the court in *Midwest Teen Centers* affirmed the trial

court's dismissal of plaintiff's complaint for money damages. Additionally, the

Court notes that the court recognized that a license ordinarily does not carry with it

a property interest. *See Midwest Teen Ctrs.*, 36 Mich. App. at 632. Specifically,

the court stated that a license could be suspended or revoked at any time by the

appropriate authority in exercise of the police power, in keeping with the *terms of*

*the permit. Id.* That ruling is not inconsistent with *Bundo*. *Bundo* identified the

specific scenario that created an exception to the generally preconceived notion of

property rights in a license. As such, in keeping with the terms of the permit,

Nationwide Recovery had a property interest that could only be disturbed through

a hearing.

The Court finds that Nationwide Recovery had a property interest in the

towing permit and having its name on the authorized towing list. Nationwide

Recovery's permit was more than a unilateral expectation; it was a conferred

benefit and claim of entitlement. The BPC provided towing standards and rules, Nationwide Recovery applied for a towing permit, and DPD granted the permit. The permit had an expiration date of May 31, 2021. Nationwide Recovery's expectation was that the permit was good until its expiration, or, until terminated following a hearing as outlined in the towing rules. The Court recognizes the City's position that Nationwide Recovery was engaged in criminal conduct, and the City could immediately terminate the permit pursuant to the towing rules. While this is true, even if Nationwide Recovery was engaged in criminal conduct, the towing rules provided that as soon as practical "the permit holder shall be afforded an opportunity for a hearing." (ECF No. 24-7 at Pg ID 579; ECF No. 41-9 at Pg ID 1552.)

### 2. What Due Process Is Due

Having found that Plaintiffs have a property interest, the Court now turns to what procedure was due. The concept of due process is flexible. "A procedural rule that may satisfy due process in one context may not necessarily satisfy procedural due process in every case." *Bell v. Burson*, 402 U.S. at 540. "When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite." *Id*. at 569-70. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."

18

*Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotation marks and

citation omitted).

What process is due depends on several factors:

> First, the private interest that will be affected by the
> official action; second, the risk of an erroneous
> deprivation of such interest through the procedures used,
> and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's
> interest, including the function involved and the fiscal
> and administrative burdens that the additional or
> substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335.

It is uncontested that Nationwide Recovery did not receive a hearing either

before or after its permit was suspended and ultimately revoked. Pursuant to the

towing rules, Nationwide Recovery was entitled to a hearing before the termination

of its permit in the event of breach of the towing rules. (ECF No. 41-9 at Pg ID

1552.) The permit could be terminated immediately for fraud or criminal conduct.

However, in accordance with the towing rules, "as soon as practicable,"

Nationwide was entitled to a hearing. Neither happened in this case. Nationwide

Recovery believed it would receive the benefit of the towing permit until its

expiration or until a hearing determined otherwise. The City makes no argument

that § 55-2-82 or the BPC's towing rules were in violation of any state or local law.

BPC had the power to "promulgate administrative rules for the Body's

determination as to which towers shall be called for tows," and the procedural protections provided to permit holders. Those protections were not observed here.

The Court's decision has no effect on the City's reasoning for terminating Nationwide Recovery's permit. This decision relates only to the procedural protections to which Nationwide Recovery was entitled, *i.e.*, a hearing either before or after its permit was revoked.

### E. Plaintiffs' Motion to Strike Argument V of the City's Motion to Dismiss (ECF No. 87)

The City filed a motion to dismiss on February 16, 2018. (ECF No. 81.) Argument V of the motion argues for dismissal of Plaintiffs' due process claims. In response, Plaintiffs filed a motion to strike. (ECF No. 87.) Because this Court has ruled on the due process claim, Plaintiff's motion is denied as moot.

## IV. Conclusion

Accordingly,

**IT IS ORDERED**, that Plaintiffs' motion for partial summary judgment is (ECF No. 24) is **GRANTED**; and

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment (ECF No. 40) is **DENIED**; and

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike (ECF No. 87) is **DENIED, as moot**.

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 21, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, August 21, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager