UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE RECOVERY, INC.
JERRY PARKER, HUSSEIN M. HUSSEIN,
LOUAY M. HUSSEIN, ANNIE HUSSEIN,
JULIA HUSSEIN, and CAROL HENDON,

           Plaintiffs,          Case No. 17-cv-12378
                                        Honorable Linda V. Parker

v.

CITY OF DETROIT,

           Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING DAMAGES (ECF NO. 147)

On July 24, 2017, Plaintiff Nationwide Recovery, Inc. ("Nationwide") initiated a single count complaint against Defendant City of Detroit ("City"), asserting due process violations under 42 U.S.C. § 1983. (ECF No. 1.) The lawsuit arises from the City's suspension of Nationwide's towing permit and removal from the police authorized towing list without a pre-deprivation hearing. (*Id.*) The Court has found that the City violated Nationwide's due process rights. (ECF No. 119.) Presently before the Court is the City's Motion for Partial Summary Judgment Regarding Damages. (ECF No. 147.) The motion has been fully briefed. (ECF Nos. 148, 156, 157.) Each party also filed supplemental

briefs, to which the opposing party responded (ECF Nos. 161, 162, 170-73), and the Court held a motion hearing on March 10, 2021 (ECF No. 163). For the reasons stated below, the Court denies the City's motion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2011, the Detroit Police Department ("DPD") placed Nationwide on its list of authorized towing companies and issued a towing permit to Nationwide. In May 2016, the DPD renewed Nationwide's towing permit. At that time, the towing rules stated:

> The City may immediately terminate any towing permit with a tow company for fraud or criminal conduct by the tow company or its employees, provided however, that as soon as practicable the permit holder shall be afforded an opportunity for a hearing before the Board of Commissioners or the Board's designee following which hearing the Board shall either affirm or rescind the termination.

(ECF No. 41-9 at Pg. ID 1553.) The towing rules also permitted the City, after a hearing, to terminate a towing permit "in the event of a breach of the towing permit or any provision of the towing permit or [the towing r]ules …." (ECF No. 147-5 at Pg ID 4697.)

On July 19, 2017, DPD Lieutenant Michael A. Parish forwarded to DPD Assistant Chief of Police James E. White an inter-office memo titled "Preliminary Report on the Matter of Nationwide Towing and Its Involvement in the Theft of a

White 2017 Jeep Cherokee." (ECF No. 148-5 at Pg. ID 4871.) The memo states in relevant part:

> For at least the last year, Nationwide has had the reputation of recovering stolen vehicles at an alarming rate. Department entities, including the Commercial Auto Theft Team and the Department's Public Integrity Unit had voiced concerns that Nationwide may have been involved, or at least complicit, in the thefts; however, there was insufficient evidence to carry the concern and surveillance operations had been unsuccessful . . . .
>
> According to these statistics, Nationwide's recoveries far exceeded those of other companies participating in [the DPD's stolen car] initiative, particularly considering Nationwide's limited participation in the program. Officers assigned to the Abandoned Vehicle Task Force had expressed concern over the rate at which Nationwide was finding these vehicles; however, other than conjecture, no one had clear evidence that Nationwide was involved in the thefts.

(*Id.* at Pg. ID 4871-72.) The memo then details Nationwide's alleged involvement in the theft of a white 2017 Jeep Cherokee, specifically noting:

- That Nationwide has managed to recover vehicles at an alarming rate over at least the past year.

- That the timestamped video shows the vehicle being stolen on July 15, 2017, at 7:05 a.m., and Nationwide's tow card documents the recovery at 7:19 a.m., only 14 minutes later.

- That according to Nationwide's own record, by the time the vehicle had been recovered, it had already been stripped of its tires.

3

- That it is [Lieutenant Parish's] opinion that the vehicle could only have been stolen, partially stripped, and recovered within such a 14 minute period unless [sic] Nationwide had participated in the theft.

- Nationwide's tow card reflects that Detective McMahon was the complaining officer; however, [a] preliminary investigation revealed that Detective McMahon was not working and may have been out of town.

- That [Lieutenant Parish is] of the opinion that based on the information available at th[at] time that Nationwide's tow car[d] contains false statements with respect to Detective McMahon being listed as the complaining officer.

(Id. at Pg. ID 4874-75.) Lieutenant Parish concluded that, "[b]ased on the circumstances in their totality, the Department has sufficient evidence that Nationwide has been involved or at least complicit in the theft of vehicles." (Id. at Pg. ID 4875.) He then recommended "further investigation into the criminal aspects of [the] matter" and that Nationwide be immediately suspended from the DPD's list of authorized towing companies. (Id. at Pg. ID 4875.)

Also on July 19, 2017, Assistant Chief White forwarded an inter-office memo to DPD Chief of Police James E. Craig, concurring with Lieutenant Parish's recommendation. (ECF No. 154-2.) Then, Assistant Chief White and Lieutenant Parish signed an "Administrative Message" suspending Nationwide from the towing rotation. (ECF No. 148-2.)

4

The investigation into the alleged theft of the Jeep Cherokee began shortly after it was stolen and continued after the City terminated Nationwide's permit on July 19, 2017. (*See* ECF No. 149 at Pg. ID 4882-84.) According to Assistant Chief White, the evidence was "inconclusive" and, "based on the facts," "[the City] [was] not able to prove [or] refute the allegation[]"—that is, that Nationwide was involved in the theft. (ECF No. 148-4 at Pg. ID 4811, 4818.)

In 2018, the City filed a public nuisance action against Nationwide based on Nationwide's alleged illegal and improper recovery of stolen vehicles. After a two-week bench trial, the state trial court entered a verdict in favor of the City. (ECF No. 147-2 at Pg ID 4620-67.) The court concluded that at least one Nationwide employee, Kenneth Christian, had coordinated with car thieves. (*Id.* at Pg ID 4651.) The Michigan Court of Appeals subsequently affirmed that decision. *City of Detroit v. Nationwide Recovery, Inc.*, No. 348814, 2021 WL 1051247 (Mich. Ct. App. Mar. 18, 2021).

In the meantime, on August 21, 2018, this Court issued a decision finding that Nationwide had a property right in its towing permit and that the City violated Nationwide's due process rights by suspending the towing permit without a hearing. (ECF No. 119.) The Court subsequently permitted summary judgment briefing as to damages. (ECF No. 145.)

## II. LEGAL STANDARD

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has the initial burden of showing "the absence of a genuine issue of material fact." *Id*. at 323. Once the movant meets this burden, the "nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a reasonable jury could find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252.

"A party asserting that a fact cannot be or is genuinely disputed" must designate specifically the materials in the record supporting the assertion, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See Liberty Lobby*, 477 U.S. at 255.

### III. APPLICABLE LAW & ANALYSIS

The City argues that even if Nationwide's procedural due process rights were violated, the company is entitled to no more than nominal damages. (ECF No. 147 at Pg. ID 4600.) Nationwide contends that it is entitled to compensatory damages. (ECF No. 148 at Pg. ID 4744.)

Under Sixth Circuit law, the compensatory damages analysis proceeds under two inquiries. "The first inquiry concerns causation; whether the action taken without due process is justified or, in other words, whether the same action would have been taken even if due process had been afforded. . . . The second inquiry is whether there was proof of actual injury, . . . caused by the denial of due process, to support an award of compensatory damages . . . ." *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986) (citing *Carey v. Piphus*, 435 U.S. 247, 263-64 (1978)). Regarding the second inquiry, the City does not dispute that Nationwide

7

experienced actual injury. (*See* ECF No. 147 at Pg. ID 4601.) Under the first inquiry, the City bears the burden of showing that it would have terminated Nationwide's towing permit even if it had provided Nationwide with a proper hearing. *Franklin*, 795 F.2d at 1263 ("[O]nce it is determined that a claimant's due process rights were violated, 'the burden of proof shifts to the defendants to demonstrate that the procedural violation did not cause the plaintiff's injury.'").

The first issue this Court must resolve is what evidence the City can rely upon to demonstrate that it would have made the same decision had Nationwide been afforded the necessary hearing. When the Court asked this question at the March 10, 2021 motion hearing, the parties agreed on the following principle: Evidence that proves that Nationwide or its employees took tips from or paid car thieves on or prior to July 19, 2017 is admissible and relevant, *even if that evidence was unknown to the City* at the time of the of the July 19, 2017 permit revocation decision.[1] (*See* 3/10/21 Hr'g Tr. at 12:20-16:1, ECF No. 176 at Pg. ID 5633; ECF

---

[1] During the motion hearing, Nationwide's counsel stated:

> I agree with the Court's earlier statement that I too have combed the case law, and I didn't find a case that dealt with . . . after termination evidence, and what Nationwide believes the standard should be is one that ensures municipalities and the government treat people fairly. Evidence that was in existence at the time of the action, of the termination, should be able to be used even if it was determined -- even if it was found three months after or four months after. . . . So I don't believe the City should be limited to evidence that it knew of on July 19th, but I think the City should be limited to Nationwide's

8

No. 178 at Pg. ID 5745.) While courts "are not bound to accept 'what in effect [i]s a stipulation on a question of law[,]'" *United States v. Wilson*, 978 F.3d 990, 996-97 (6th Cir. 2020) (quoting *U.S. Nat'l Bank of Or. v. Ind. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993)), the parties' stipulation appears to be a correct assessment of the law, *see McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360-61 (1995). As such, evidence available on or prior to July 19, 2017, even if unknown to the City at that time, is admissible and relevant to decide whether the City would have made the same decision had it afforded Nationwide a hearing.

---

> conduct up to July 19th and prior to that, because how can conduct that occurred after that be used as a justification. I don't believe that a party -- if somebody with a protected property interest should be rewarded for concealing evidence. . . . So I don't believe it's a workable standard to say that [the limit is] what the City knew at the time of the termination . . . . It should be what's in existence. I wouldn't object if the Court adopted a more restrictive standard, but I have to . . . make this argument with a straight face. . . . I don't think that a Court should wear a blindfold to facts that existed before -- now, facts that existed before the date and that support the city's theory. If it was a completely different -- if it was evidence that was for another theory, we're engaging in a Whac-a-Mole, but if the City had evidence that Nationwide was engaged in criminal or fraudulent conduct before that July 19th and it didn't discover until after the termination, I don't think it would be a workable constitutional standard to limit the City to – to only facts that it knew at the time of the hearing, because it can have suspicions that turn out to be proven by evidence that existed at the time of the decision.

(3/10/21 Hr'g Tr. at 12:20-16:1.)

9

Such evidence is relevant, however, only to the extent that it supports a justifiable basis for terminating Nationwide's towing permit (i.e., one permitted by the towing rules) *and* if the permit would have been revoked "on those grounds alone if the [City] had known of it at the time of the discharge[.]" *McKennon*, 513 U.S. at 362-63.  The evidence of which the City was aware prior to terminating Nationwide's towing permit is set forth in Section I.  With respect to the alleged theft of the white Jeep Cherokee and whether Nationwide was complicit in the theft, Assistant Chief White described the evidence as "inconclusive" and further stated that, "based on the facts," "[the City] [was] not able to prove [or] refute the allegation[]."  (ECF No. 148-4 at Pg. ID 4811, 4818.)  The inter-office memo forwarded by Lieutenant Parish on July 19, 2017, indicated that there was "insufficient evidence" to support concerns that Nationwide was involved in the vehicle thefts.  (ECF No. 148-5 at Pg ID 4871072.)

The City subsequently discovered that "at least one Nationwide employee," Kenneth "Turbo" Christian, "was in contact with car thieves at the time Nationwide's permit was terminated."  (ECF No. 170 at Pg. ID 5579 (citing Christian Dep., ECF No. 147-3 at Pg. ID 4674-75).)  But being "in contact" with car thieves is quite different than taking tips from and paying them.  According to the City, here is what the record shows (and what the Court should consider) regarding when Christian allegedly took tips from or paid car thieves:

10

- Christian stated he encountered several members of the "Cherokee Crew" in person in early July 2017 [approximately three weeks before July 28, 2017], while he was looking for stolen vehicles. They offered to give Christian locations of stolen cars. . . . Christian [stated] that the thieves did not ask for money nor did he ever offer to pay them. The July 28, 2017 Jeep Cherokee recovery resulted from Christian's third tip from the thieves.

- Christian claimed that after the July 28, 2017 incident, Louay ordered Christian not to accept tips. Louay warned that continuing to deal with car thieves would result in Christian losing his job and going to jail. Christian claimed he ceased dealing with the thieves after that incident. He received a few texts in early August 2017 but he never responded and the texts stopped in August. . . . Christian deleted his texts daily including those from the thieves . . . .

- Lt. Parish ultimately confronted Christian with forensic information obtained under subpoena from a phone taken from a car thief arrested by DPD. The phone showed hundreds of communications with Christian's cell phone, the first of which was July 27, 2017. Voluminous entries continued throughout August, September and October 2017. Confronted with documentary evidence of Christian's lies, the lawyers ended the interview.

- Based on forensic evidence recovered by the DPD, including Christian's texts telling the thieves to come and get their money, the state court presiding over the City's public-nuisance action against Nationwide and others ruled: "Clearly, Christian was paying car thieves for locations to recover vehicles;" and "There's no question that Christian was receiving tips from known thieves."

- In the state court nuisance litigation (late 2018 and early 2019), Christian repeatedly invoked the 5th amendment

11

both at his deposition and trial. . . . By invoking the 5th amendment Christian has refused to disclose the actual scope of his dealings with car thieves. But this Court can and should infer an obvious adverse inference—Christian was taking tips from car thieves throughout (at least) July 2017.

- [On March 18, 2021], the Michigan Court of Appeals [] affirmed [the state trial court's ruling in favor of the City, stating, in part]: "Although the trial court found that [the City] failed to prove any knowing collusion between Louay and known car thieves, the parties do not contest the trial court's finding that at least one of Nationwide's drivers, Kenneth "Turbo" Christian, "clearly" paid individuals he knew to be car thieves for tips regarding where stolen vehicles could be located. In effect, this offered an extra financial incentive for car thieves to steal vehicles . . . . [There] was strong circumstantial evidence that [stolen] vehicles were located in one of two improper ways: either by paying car thieves for tips or by trespassing on private property in search of stolen vehicles. It was a reasonable inference that Nationwide's drivers performed warrantless searches with knowledge and encouragement of law enforcement that could not have been performed by the police directly without violating the Fourth Amendment." (*Id*. at Pg. ID 5726.)

(ECF No. 176 at Pg ID 5634-37; ECF No. 177 at Pg. ID 5712.)[2]

---

[2] The City also asks the Court to consider the state litigation, a 2018 audit of Nationwide's towing fees, and a 2018 administrative hearing. (*See* ECF No. 147 at Pg ID 4602-15.) However, the City does not identify specific evidence of criminal or fraudulent conduct pre-dating the July 19, 2017 termination decision revealed in those sources, apart from its attempt to do so with the evidence outlined above. The state courts referred to Nationwide's excessive towing fees as "offensive" and indicated that the removal of vehicles without an officer present violated the state's statutory framework for the removal of vehicles, *see, e.g., Nationwide*, 2021 WL 1051247, at *3, 10; but the City does not explain how this conduct constituted fraud or a crime. To the extent this conduct violated the City's towing rules, the

12

Even if the above are accepted as fact, they fail to establish that Christian took tips from or paid car thieves *prior to* the July 19, 2017 permit revocation decision. The record does not contain a single fact upon which the jury could infer that the car thieves provided their first or second tip—or any other tip—sometime *before* July 19, 2017, as opposed to sometime *after*. Nor does the record contain a single fact upon which the jury could infer that Christian paid the car thieves for a tip sometime *before* July 19, 2017, as opposed to sometime *after*.

A jury is permitted to draw "*justifiable* inferences." *Liberty Lobby*, 477 U.S. at 255 (emphasis added). Such inferences can be drawn when there is "sufficient probative evidence [that] would permit a finding . . . on more than mere speculation, conjecture, or fantasy." *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004). But "[a] jury cannot render a verdict on the basis of speculation, surmise[,] or conjecture." *Gold v. Nat'l Sav. Bank of City of Albany*, 641 F.2d 430, 435 (6th Cir. 1981).

---

City fails to demonstrate that it was of such severity—to the extent related to DPD tows as opposed to those for the Wayne County Sheriff's Office or others—that the City would have terminated the towing permit on those grounds alone. The City argues in its briefs, for example, that Nationwide's excessive towing fees provided "an additional and independent ground for the revocation of its permit (*see, e.g.*, ECF No. 147 at Pg ID 4610); however, the City fails to cite evidence to show that it would have taken such action on this ground alone. In fact, despite being aware of at least some excessive charges by Nationwide (*see, e.g.*, ECF No. 148-4 at Pg ID 4833), the City never acted on that information.

13

One would have to resort to pure speculation—rather than legitimate inference—to conclude that Nationwide or one of its employees took tips from or paid car thieves prior to the July 19, 2017 permit revocation decision.  For that reason, the City has failed to establish that it would have made the same decision if Nationwide had been afforded a hearing.[3]  In short, the City is not entitled to summary judgment on whether Nationwide's recovery is limited to nominal damages.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment Regarding Damages (ECF No. 147) is **DENIED**.

**IT IS SO ORDERED**.

s/ Linda V. Parker<br>
LINDA V. PARKER<br>
U.S. DISTRICT JUDGE

Dated: March 31, 2021

---

[3] The evidence may have supported a later termination of Nationwide's towing permit, but it did not support the decision of July 19, 2017.