UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NATIONWIDE RECOVERY, INC.,
JERRY PARKER, HUSSEIN M. HUSSEIN,
LOUAY M. HUSSEIN, ANNIE HUSSEIN,
JULIA HUSSEIN, and CAROL HENDON,

              Plaintiffs,                           Civil Case No. 17-12378
                                                      Honorable Linda V. Parker

v.

CITY OF DETROIT,

              Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION**

      This matter is presently before the Court on a motion for reconsideration filed by Defendant City of Detroit ("City) (ECF No. 200) with respect to a March 16, 2022 decision denying the City's motion to compel (ECF No. 199). In the motion to compel, the City sought to compel responses to certain interrogatories and document requests by Plaintiff Nationwide Recovery, Inc. ("Nationwide") related to Nationwide's towing and storage contracts with other municipalities. In the initial motion, the City argued that this discovery was needed to show that its termination of Nationwide's towing contract and Nationwide's removal from the City's towing list was justified because Nationwide maintained a pattern and practice of charging illegal and grossly excessive towing and storage charges. The

City also argued that this would support its nominal or limited damages defense. Further, the City proffered that the excessive fees charged by Nationwide to other municipalities would explain why Nationwide "remained profitable" and "had the excess capacity to perform under its towing permit without additional labor, equipment, or real estate expenses."

This Court denied the City's motion to compel, finding Nationwide's contracts with other governmental agencies not relevant to the issues remaining in this lawsuit. (ECF No. 199.) A Michigan court already held that Nationwide routinely charged towing and storage fees not permitted under the City's towing rules and ordinances "on almost every case." (*See* ECF No. 147-2 at Pg ID 4644-46, 4665.) Further, a Detroit Police Department audit of Nationwide in 2018 uncovered that Nationwide consistently charged fraudulent and illegal fees for its DPD-authorized tows. (*See* ECF No. 156-2.) DPD Captain Michael Parish provided in an affidavit that he analyzed the towing records of Nationwide and other DPD-authorized towers and found that while the other towers complied with the towing fees mandated by City ordinance, with only a few isolated errors, Nationwide . . . routinely, and almost universally, disregarded the ordinance and charged far more than was allowed." (ECF No. 156-2 at Pg ID 5364-65, ¶¶ 35-40.) Captain Parish provided that "Nationwide's fraud with respect to its fees is not

2

tolerable for a DPD-authorized tower." (*Id*. at Pg ID 5365, ¶ 41.)  Captain Parish

further stated that "DPD would revoke the permit of any tower with a remotely

similar record of fee-related fraud." (*Id*. ¶ 44.)  Notably, Nationwide has not

presented contrary evidence.

　　While the Court has not issued a decision holding that such evidence is

admissible to limit Nationwide's compensatory damages, it is prepared to do so.

*See McKennon v. Nasvhille Banner Pub'g Co.*, 513 U.S. 352, 361-62 (holding that

after-acquired evidence of wrongdoing generally should cut-off the plaintiff's

damages from the date the information was discovered).  As both parties have

acknowledged and this Court concluded in its March 31, 2021 summary judgment

decision, "evidence available on or prior to July 19, 2017, even if unknown to the

City at that time, is admissible and relevant to decide whether the City would have

made the same decision [to terminate Nationwide's towing contract and remove it

from the list of City-authorized towers] had it afforded Nationwide a hearing."

(ECF No. 179 at Pg ID 5903-04.)  For purposes of analyzing a plaintiff's damages

arising from a procedural due process violation—as opposed to assessing pretext in

a discrimination claim as was the case in *Jones v. Potter*, 488 F.3d 397, 408 (6th

Cir. 2007)—it matters not that the City terminated Nationwide for dealing with car

thieves and not for charging excessive fees.  In fact, in *McKennon*, it was

3

information providing an alternative reason for terminating the plaintiff, which the defendant discovered during the plaintiff's deposition, that the Supreme Court found admissible on the issue of damages.  513 U.S. at 361.

Whether Nationwide also charged fees exceeding the amounts allowed under its contracts with other municipalities is not relevant to whether *the City* would have been justified to terminate its contract with Nationwide.  The relevant towing rules prohibited authorized towing companies "from charging any fee or cost in excess of that specifically authorized by *the City*."  (ECF No. 147-5 at Pg ID 4692 (emphasis added).)  For that reason, it also is not relevant what other municipalities allowed Nationwide to charge.  Thus the Court disagrees with the City that its "first mistake" was finding that the fees Nationwide charged other municipalities was not relevant to the City's claim that the fees charged as a DPD authorized tower were excessive and therefore an alternative justification for terminating Nationwide's contract.

The Court also disagrees with the City regarding the asserted "second mistake" in the March 16 decision.  One of the City's arguments for why this disputed evidence is relevant was Nationwide's claim in its explanation of damages that it "remained profitable and . . . had excess capacity to perform under its towing permit without additional labor, equipment, or real estate expenses."

4

(ECF No. 188 at Pg ID 6121 (quoting ECF No. 188-12 at Pg ID 6180).)  The City wants to attack these assertions by arguing that Nationwide only remained profitable because of its unlawful and fraudulent billings to other municipalities. However, the Court fails to understand how Nationwide's profitability and capacity bear on its claimed compensatory damages except to the extent the City asserts that Nationwide was incapable of providing tows at the rate provided before its contract with the City was terminated.  The Court does not understand the City to be arguing this.  It seems to the Court that any compensatory damages due to Nationwide would be calculated based on the number of tows it actually provided before the contract was terminated rather than some hypothetical number of additional tows it might claim it had the capacity to perform.

As to the Court's purported "third mistake," it was not clear from the City's previous filings that it was seeking to limit Nationwide's damages based on Nationwide's wrongdoings as to other municipalities as opposed to the City, itself. The City cited several cases in support of applying "[t]he principle that a wrongdoer shall not be permitted to profit through his own wrongdoing . . .." (ECF No. 188 at Pg ID 6119-20.)  Yet these cases appear to address wrongdoing as directed at the plaintiff rather than third parties.  The City has not convinced the Court that Nationwide's damages should be limited because of the excessive

towing and storage fees Nationwide collected pursuant to its contracts with other municipalities.

For these reasons,

**IT IS ORDERED** that the City of Detroit's Motion for Reconsideration (ECF No. 200) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 14, 2023

6